The City of New York, Appellant, v. New York City Railway Company, Respondent.

Same, Appellant, v. Same, Respondent.

Same, Appellant, v. Same, Respondent.

1. Practical Construction of Statutes. The practical construction of a statute by those for whom the law was enacted, or by public officers whose duty it was to enforce it, when continued for a long period, is of great, if not controlling, importance in its interpretation; but this doctrine is never applied except in case of an ambiguity so serious as to raise a reasonable doubt in a fair mind.

2. Statutes as to Certain Passenger Car License Fees in City of New York Construed. The charters of the Dry Dock and East Broadway Railway Company (L. 1860, ch. 512), East Broadway and Seventh Avenue Railway Company (L. 1860, ch. 513) and the Bleecker Street and Fulton Ferry Railway Company (L. 1860, ch. 514) each contain a clause subjecting the corporations to "the payment to the city of the same license fee annually for each car run thereon as is now paid by other city railroads in said city." These companies were predecessors of defendants. Held, in view of the ambiguity of the statute and its practical construction by the parties for more than forty years, that a basis of the greatest number of cars in daily use at the busiest season of the year is the method of computation now binding upon both parties.

3. Doctrine of Res Adjudicata, When Applied. Where the judgment in a former suit is pleaded in bar, and it appears that the parties to the pending action are privies to the parties to the action in which such judgment was rendered, the issue the same, and the proof similar in character, the law laid down in the first action is binding, upon the principle of res adjudicata.

City of New York v. New York City Ry. Co. (three cases), 124 App. Div. 936, affirmed.

(Argued December 1, 1908; decided December 15, 1908.)

Appeal in the first of the above-entitled actions from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 17, 1908, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

Appeal in the second and third above-entitled actions from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 17, 1908,

affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The first of the above-entitled actions was brought to recover the sum of $115,150 " for passenger car license fees " alleged to be due from the defendant as the final successor of the Broadway and Seventh Avenue Railway Company, incorporated by chapter 513 of the Laws of 1860, for the years 1902 to 1905, inclusive. Upon the trial of that action a verdict was directed in favor of the plaintiff for the sum of $22,850 and judgment was entered accordingly. The defendant did not appeal, but the plaintiff, deeming the amount of the recovery too small, appealed to the Appellate Division which unanimously affirmed the judgment.

The second action was brought to recover the sum of $15,800 for like fees alleged to be due from the defendant as the successor of the Dry Dock and East Broadway Railroad Company, incorporated by chapter 512 of the Laws of 1860, for the years involved in the first action.

The third action was brought to recover the sum of $11,300 for like fees alleged to be due from the defendant as the successor of the Bleecker Street and Fulton Ferry Railroad Company, incorporated by chapter 514 of the Laws of 1860, for the same years.

Upon the trial of the second and third actions a verdict was directed in each in favor of the defendant and the respective judgments entered accordingly were affirmed by the Appellate Division. The plaintiff appealed to this court from the judgments rendered by the Appellate Division in all of said actions and the appeals were argued together. The issues were the same in each, except that no plea of former suit in bar was interposed in the third. The charters of all the original companies involved in the three actions contained the same provision in relation to the payment of license fees.

*Francis K. Pendleton, Corporation Counsel (Theodore Connoly, Terence Farley* and *Frank B. Pierce* of counsel), for appellant. Where the language of a statute or ordinance

or written instrument is clear and unambiguous, the acts of the parties with reference to it cannot be considered in aid of its construction. (*Baring* v. *Waterbury*, 10 App. Div. 18; *Norton* v. *Woodruff*, 2 N. Y. 153; *Giles* v. *Comstock*, 4 N. Y. 270; *Hill* v. *Priestly*, 52 N. Y. 635; *Lowber* v. *Le Roy*, 2 N. Y. Super. Ct. 202; *C. S. Ry. Co.* v. *City of Cincinnati*, 8 Ohio N. P. 80.) A careful reading of the record and of the opinions of the courts in the *Broadway & Seventh Avenue R. R.* case will show that the liability of the company, under the ordinance of 1858, was neither litigated nor decided. (*Stokes* v. *Stokes*, 155 N. Y. 591; *Rudd* v. *Cornell*, 171 N. Y. 114; *Stokes* v. *Foote*, 172 N. Y. 327; *Cuccurullo* v. *Societa Italiana*, 102 App. Div. 276.) Assuming that it was decided in the *Broadway & Seventh Avenue R. R. Co.* case that that company was only to pay on the basis of the greatest number of cars in daily use during the busiest season of the year, that exemption from its charter obligations is personal to it and does not pass to its successors or lessees. (*City of Rochester* v. *R. Ry. Co.*, 182 N. Y. 99; 205 U. S. 236.)

*Joseph P. Cotton, Jr., R. H. Neilson* and *Henry A. Robinson* for respondent. The car license obligation which the defendant assumed is contained in the franchise grant to the Broadway and Seventh Avenue Railroad Company. That obligation was for the payment to the city of the same license fee annually for each car run thereon as is now paid by the other railroads in said city. Inasmuch as the city stipulated as a fact at the trial that the other street railroads in the city were paying at the time of the grant a fee of fifty dollars per car only on the greatest number of cars in daily use during the busiest portion of the year, it follows that that is the only car license obligation of the defendant. (*Mayor, etc.,* v. *S. A. R. R. Co.*, 32 N. Y. 261; *City of New York* v. *S. A. R. R. Co.*, 77 App. Div. 367.) If there is any doubt as to the proper construction of the Broadway and Seventh Avenue car license obligation, whether arising from the franchise grant or the ordinance, it is settled by the practical construction

35

adopted by the city and the company and its successors for over forty years. (*Troup* v. *Haight*, Hopk. 272; *Easton* v. *Pickersgill*, 55 N. Y. 310; *People ex rel. Williams* v. *Dayton*, 55 N. Y. 377; *Power* v. *Vil. of Athens*, 99 N. Y. 592; *Matter of W. S. A. & P. R. R. Co.*, 115 N. Y. 442; *People* v. *H. Ins. Co.*, 92 N. Y. 328; *People* v. *Murray*, 149 N. Y. 367; *U. S.* v. *A. R. R. Co.*, 142 U. S. 615.) The method of computing car license fees having been an issue in the action entitled *Mayor, etc.*, v. *Broadway & Seventh Avenue Railroad Company*, decided in 1875, it cannot be raised again in an action between privies to the parties to that judgment. (1 Van Fleet on Former Adjudication, 2; *Birckhead* v. *Brown*, 5 Sandf. 134; *Brown* v. *Mayor, etc.*, 66 N. Y. 385; *Henck* v. *Barnes*, 84 Hun, 546; *Tuska* v. *O'Brien*, 68 N. Y. 446; *McLaughlin* v. *G. W. Ins. Co.*, 20 N. Y. Supp. 536; *Gates* v. *Preston*, 41 N. Y. 113; *Hughes* v. *United Pipe Lines*, 119 N. Y. 423; *Potash* v. *Utopia Land Co.*, 48 Misc. Rep. 402; *Culross* v. *Gibbons*, 130 N. Y. 447; *House* v. *Lockwood*, 137 N. Y. 259; *Williams* v. *Barkley*, 165 N. Y. 48; *Hirschbaum* v. *Ketchum*, 79 App. Div. 561; *Pakas* v. *Hollingshead*, 184 N. Y. 211.)

VANN, J.   The questions of law involved in these appeals are the same in each action, with one exception to be noted hereafter, and for convenience the discussion will be confined in form to the first action, although what is said is equally applicable to all, except as otherwise specified.

The charter of the defendant's predecessor was granted by a special statute entitled " An act to authorize the construction of a railroad in Seventh avenue, and in certain other streets and avenues of the city of New York," which became a law on the 17th of April, 1860, "notwithstanding the objections of the Governor." (L. 1860, ch. 513.) By the first section of that act, certain persons and their assigns were authorized to construct, operate and use the railroad in question upon certain designated streets and avenues. The second section thereof is as follows : " Said railroad shall be constructed on

the most approved plan for the construction of city railroads, and shall be run as often as the convenience of passengers may require, and shall be subject to such reasonable rules and regulations in respect thereto as the common council of the city of New York may from time to time by ordinance prescribe· *and to the payment to the city of the same license fee annually for each car run thereon as is now paid by other city railroads in said city;* and the said persons and their assigns are hereby authorized to charge the same rate of fare for the conveyance of passengers on said railroad as is now charged by other city railroads in said city."

Upon the trial it was stipulated by the parties that on the 17th of April, 1860, the day when the franchise was granted, no city railroad in the city of New York paid car license fees computed " on the basis of each and every car run by it during the year," but all that paid any license at all paid " on the basis of the greatest number of cars in daily use by the company at the busiest season of the year," and that for over forty years prior to 1902, which is the first of the years now involved, the defendant and its lessors paid license fees for cars operated under said franchise upon the latter basis only. No question was raised as to the amount of the fee, and the only question litigated related to the proper method of computation. The defendant claimed that its obligation was to pay what other railroads were in fact paying when the act of 1860 was passed. The plaintiff claimed that the obligation of the defendant was . not to pay what other city railroads were in fact paying at .that date but what they ought to have paid according to law.

The main reliance of the city is an ordinance passed by the common council on the 31st of December, 1858, which, among other things, provided that " each and every passenger railroad car running in the city of New York below One Hundred and Twenty-fifth street shall pay into the city treasury the sum of fifty dollars annually, a certificate of the payment to be procured from the mayor," etc.

If we assume that the legislature had this ordinance in

mind when it passed the act of 1860, should we further assume that it considered the letter thereof only, or the ordinance as then construed and enforced by the city authorities? Did it intend to exact a license fee for a car running but one day in a year to take the place of a disabled car; or a car borrowed for a special occasion, that had already paid the fee under another franchise; or for open cars substituted in the summer for the closed cars of winter? If the statute and ordinance are to be read together, both should receive a reasonable construction. It is insisted that it would not be reasonable to hold that all the cars whether run regularly or not were to be included, but those only that were used in conducting the ordinary business of the road as distinguished from those used rarely or for special purposes.

The charter, when accepted and acted upon by the company, became a contract and there was doubt as to what the contract meant. The terms of the grant were ambiguous. The legislature by the act of 1860 did not directly fix the fees, either as to amount or the method of computation, but referred to an existing fact and made that the basis of both. That fact was the amount paid for each car by other city railroads. Some of those roads paid no license fees, and others paid at the rate of fifty dollars per car for the greatest number in daily use during the busiest season. That was the rate actually paid, as contrasted with the theoretical rate of fifty dollars for "each and every passenger railroad car running in the city of New York," which the plaintiff now claims should have been paid by those other roads according to the ordinance.

Under these circumstances the practical construction of the parties by a uniform course of conduct under all administrations of the city government for more than forty years is of controlling importance. When the parties to a contract of doubtful meaning, guided by self-interest, enforce it for a long time by a consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning, even if as an original proposition they might have given it a different one. (*Woolsey* v. *Funke*, 121 N. Y.

87, 92 ; *Syms* v. *Mayor, etc., of N. Y.* 105 N. Y. 153, 157;
*French* v. *Carhart,* 1 N. Y. 96, 102; *Livingston* v. *Ten
Broeck,* 16 Johns. 14, 22.)  So, when the meaning of a statute
is doubtful, a practical construction by those for whom the law
was enacted, or by public officers whose duty it was to enforce
it, acquiesced in by all for a long period of time, in the language
of Mr. Justice Nelson, "is entitled to great if not controlling
influence." (*Chicago* v. *Sheldon,* 9 Wall. 50, 54.)  In *People
ex rel. Williams* v. *Dayton* (55 N. Y. 367) the practical
construction of a doubtful statute by the legislative and execu-
tive departments, continued for many years, was held to
have "controlling weight in its interpretation."  To the same
effect is the case of *Power* v. *Village of Athens* (99 N. Y.
592).  It is held to have great weight even in the construc-
tion of the Constitution itself. (*People* v. *Home Insurance
Co.,* 92 N. Y. 328, 337; *People ex rel. Einsfeld* v. *Murray,*
149 N. Y. 367, 376.)

As the statute and the ordinance are not clear as to the
method of computing the license fees, we give effect to the
practical construction of the parties continued for so long a
period and hold that the basis of the greatest number of cars
in daily use at the busiest season of the year is the method
that is now binding upon both parties.  This was the posi-
tion taken by the courts below, and we will not repeat their
reasoning.

The circumstances under which the doctrine of practical
construction is applied or withheld by the courts is well illus-
trated by comparing the three appeals now under considera-
tion with the appeals in three other actions brought by the
city against certain other railroad companies for the recovery
of license fees.  In those cases the doctrine was not applied by
the courts below, and yet we are about to affirm the judgments
rendered therein.  (193 N. Y. 679, 680.)  The controlling dis-
tinction between the two series of cases is that in the one there
was an ambiguity in the grant and in the other there was not.
In the first series we have tried to show in what respect the
meaning was doubtful.  In the second series the franchise

provided in substance that each passenger car used on the road should be licensed every year by the mayor, and that the company should pay for such license such sum as the common council should thereafter determine. By an ordinance subsequently passed by the common council and approved by the mayor, the license fee was fixed at a certain sum for each and every passenger car run on the road during the year and it was further provided that a certificate of payment of the fee should be posted in each car used on the road under a penalty for operating any car unless such a certificate was posted therein. Under these circumstances it was held by the Supreme Court that notwithstanding the fact that said companies for many years had paid on the basis of the greatest number of cars run during the busiest season, the doctrine of practical construction should not be applied, because there was no room for its application, inasmuch as there was no ambiguity in the grant. We think that position is sound, for the doctrine is never applied unless the door is opened by an ambiguity, which is the foundation of the principle upon which the doctrine is founded. It goes without saying that the ambiguity must not be captious, but should be so serious as to raise a reasonable doubt in a fair mind, reflecting honestly upon the subject, before the principle of practical construction can be applied.

In the first series of cases, now under direct consideration with the exception of the third, the defendant pleaded among other defenses a former suit in bar, in that on the 25th of October, 1875, the plaintiff or its predecessor commenced an action against the Broadway and Seventh Avenue Railway Company, the defendant's ultimate lessor, to recover the amount alleged to be due for car license fees during the years 1864 to 1874, inclusive, under the statute and ordinance involved herein. It is alleged that the question at issue, litigated and determined therein, was upon what number of cars said company was each year obliged to pay car license fees and that the judgment rendered at the trial court and affirmed in this court was that

said company should pay fees not on each and every car operated by it during each year, but on the greatest number of cars in daily use by it during the busiest season of the year. The record, which was read in evidence, sustained the plea in every respect and judgment was rendered accordingly. The parties to the present action are privies to the parties in that and the proof in that was similar in character to the proof in this. The method adopted of establishing the facts by stipulation, at least in the absence of fraud which is not claimed, does not differ in its effect from the method of establishing the facts by evidence introduced in the ordinary manner. The facts having been established, the court announced the law applicable to those facts, and even if the decision was wrong, it is as binding on the parties in this action as it was on the parties in that, upon the principle of *res adjudicata.* The law once laid down upon a specified state of facts is binding upon the parties to the controversy and their privies for all time. (*Brown* v. *Mayor, etc., of N. Y.,* 66 N. Y. 385, 390 ; *Williams* v. *Barkley,* 165 N. Y. 48.)

The judgments appealed from should be affirmed, with costs.

Cullen, Ch. J., Gray, Edward T. Bartlett, Haight, Willard Bartlett and Chase, JJ., concur.

Judgments affirmed.