ROBERT ADAMSON, as Fire Commissioner of the City of New York, Respondent, *v.* CARL SCHREINER, Appellant.

First Department, December 29, 1916.

Insurance — agent of foreign insurance company not required to pay percentage on contract of reinsurance under section 799 of Greater New York charter — history of said section — statutes — rules of construction.

A contract of indemnity by which a foreign corporation doing business in the city of New York assumes part of the risks of a domestic company, but receives no premium from the insured, is not "insurance against loss or injury by fire" within the meaning of section 799 of the Greater New York charter, requiring every person acting in the city as agent for such a corporation, to pay a certain percentage of the premiums to the fire commissioner.

If there were any doubt as to the meaning of said section, the practical construction given for more than sixty years by the various city officials in applying it only to the premiums received upon the original policy of insurance upon the property, and excluding contracts of reinsurance, would have controlling influence upon the courts.

A statute levying a tax is to be construed most strongly against the government.

History of section 799 of the Greater New York charter stated, per PAGE, J.

APPEAL by the defendant, Carl Schreiner, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of January, 1916, upon the decision of the court after a trial at the New York Trial Term, a jury having been waived.

The judgment directed defendant to render an account to plaintiff for premiums received on contracts of reinsurance by him as agent of the Munich Reinsurance Company.

The opinion delivered at Trial Term is reported in *Adamson v. Schreiner* (95 Misc. Rep. 386).

*William B. Ellison,* for the appellant.

*John F. O'Brien,* for the respondent.

*George Richards,* for the New York Board of Fire Underwriters.

PAGE, J.:

The sole question involved in this appeal is does the business carried on by the Munich Reinsurance Company come within the provisions of section 799 of the Greater New York charter (Laws of 1901, chap. 466).* That section of the charter provides, so far as material to the present consideration, "There shall be paid to the fire commissioner * * * by every per-. son who shall act in The City of New York, as agent for or on behalf of any individual or association of individuals, not incorporated by the laws of this State, to effect insurance against losses or injury by fire in The City of New York, although such individuals or association may be incorporated for that purpose by any other State or country, the sum of two dollars upon the hundred dollars, and at that rate upon the amount of all premiums which, during the year * * *, shall have been received by such agent or person, or received by any other person for him * * *."

The Munich Reinsurance Company is a corporation organized under the laws of Germany and was permitted to do business in this State first in 1898 and continued until 1912. During all this time the defendant was the sole representative of the company in this country except the trustees who held certain of the assets of the company to protect liabilities in this country. The company has built up a large business in reinsurance. The method of doing business is this. The Munich Company makes a contract with other insurance companies whereby it agrees upon payment to it of a proportionate amount of the premium which the direct writing company has received upon its policy, the Munich Company will assume a proportionate amount of the risk. This contract was binding upon the Munich Company for all transactions that the direct writing company might choose to submit for reinsurance. These were tabulated and at the end of the month the direct writing company was debited with the proportionate amount of the premiums, and this amount was paid by the direct writing company into the bank or banks nominated by the Munich Company. The Munich Company thus received no premiums

---

* Since amd. by Laws of 1915, chap. 594.—[REP.

from the original policyholder and entered into no contract relation with him. The original premium was segregated and a portion thereof paid by the direct writing company under the agreement of the reinsurance company to indemnify it against a proportionate amount of its liability. This form of reinsurance has been well known for many years and has a well-defined meaning. The Court of Appeals has thus defined it: "The meaning of reinsurance is an indemnity against a risk incurred by the assured in consequence of a prior insurance upon the same property or some part of it." (*Mutual Safety Ins. Co.* v. *Hone*, 2 N. Y. 235, 240.) A more full explanation of this term was given by Mr. Justice PECKHAM: "The term 'reinsurance' has a well-known meaning. That kind of a contract has been in force in the commercial world for a long number of years, and it is entirely different from what is termed 'double insurance,' *i. e.*, an insurance of the same interest. The contract is one of indemnity to the person or corporation reinsured, and it binds the reinsurer to pay to the reinsured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured." (*Allemannia Ins. Co.* v. *Firemen's Ins. Co.*, 209 U. S. 326, 332.)

It has never been held that a contract of indemnity by way of reinsurance was "insurance against losses or injury by fire" within the contemplation of section 799 of the charter, although similar legislation has been on the statute books of this State for over 100 years. The reason for this becomes apparent when we trace the history of this legislation. (See *Fire Department* v. *Stanton*, 159 N. Y. 225, 229.) The first statute in this State dealing with this subject was chapter 49 of the Laws of 1814, which is entitled "An Act to prevent foreigners from becoming insurers in certain cases in this State," and so far as necessary to our consideration reads as follows: "Whereas a certain company or association of persons in England, under the name of the 'Phœnix Insurance Company,' have appointed agents and established offices in this State, for the purpose of making insurance in this State, on behalf of the said English company or association: Therefore, 1. Be it enacted by the People of the State of New-York, represented in Senate and

Assembly, That it shall be unlawful for any person residing in any foreign country, or for any association or company of persons, residing in any foreign country, or for any incorporation established in any foreign country, or for any person whomsoever, on behalf of any such person, association, company or corporation, directly or indirectly, to make any contract of insurance, or by way of insurance, against loss or injury by fire, upon any house, building or goods, situated or being in this State." The reason for this enactment is stated in a foot note: "As during a state of war, foreigners, especially alien enemies, could not be coerced by any of our courts of justice to the performance of their contracts, this act, for this among other reasons, was adopted by the Legislature." It will be noted that this was an act of exclusion against foreign citizens or corporations from the transacting of the business of insuring "against loss or injury by fire, upon any house, building or goods" within the State.

In 1824 an act was passed (Laws of 1824, chap. 277) which required agents of any individuals or associations of individuals not incorporated by the laws of this State, although incorporated by the laws of another State, for the purpose of effecting insurance or contracts of insurance within this State against losses by fire to render to the Comptroller an account of all premiums received by him or any other person or agreed to be paid for any such insurance during the year, and to pay into the treasury of the State ten per cent of the amount of all such premiums. The provisions of these two statutes were carried into the Revised Statutes of 1829, which took effect on January 1, 1830, and became respectively sections 1 and 3 of title 21 of chapter 20 of part 1 (1 R. S. 714). By Laws of 1837, chapter 30, the aforesaid section 3 of the Revised Statutes was amended reducing the license fee from ten to two per cent of the amount of premiums.

In 1849 an act was passed (Laws of 1849, chap. 178) which was entitled "An Act further to amend the acts in relation to insurances on property in this State made by individuals and associations unauthorised by law." In this act there is no prohibition on the doing of business by foreign fire insurance companies, etc. The license fee instead of being paid to the

State was directed to be paid to the treasurer of the fire department of the city of New York by agents of companies not incorporated in this State, although they may be incorporated in other States or countries. In substance this act is the same as section 799 of the Greater New York charter.

In 1857 sections 1, 2, 3 and 4 of the above mentioned act of 1849 so far as applicable to the city of New York were repealed (Laws of 1857, chap. 548), and in substitution therefor there was enacted ten sections, section 1 being in substance the same as section 1 of the act of 1849. This act is likewise entitled as relating to insurance on property in this State, and there was a proviso, "That any corporation or association created by, or organized under the laws of any government other than the States of this Union, and having assets, funds or capital, not less in amount than three hundred thousand dollars, invested in this State, shall be liable to taxation upon such assets, funds or invested capital, as the same is levied or assessed yearly by law, which tax shall be paid as follows: Such an amount thereof as would be equal to two per cent upon its gross premiums received for insurances upon property in the city of New-York, shall be paid annually as hereinbefore provided to the treasurer of the fire department of the city of New-York, and the residue * * * shall be paid to the mayor, aldermen and commonalty of the city of New-York * * *." These provisions were amended by chapter 255 of the Laws of 1858. This proviso became section 522 and section 1 of the act became section 523 of the Consolidation Act of 1882 (Laws of 1882, chap. 410), and in turn became sections 798 and 799 of the Greater New York charter (Laws of 1897, chap. 378; Laws of 1901, chap. 466). It will be noted that the premiums upon which the license fee was imposed were those received from insurance against losses by fire upon property in this State, and not upon contracts of indemnity against losses sustained upon contracts of insurance. These contracts of indemnity or of reinsurance have never since the passage of the act of 1849 been subjected to the payment of the license fee, although during the entire period the business of reinsurance has been carried on in New York city by foreign companies. If there were any doubt as to the construction of

the act, the practical construction given to this act for more than sixty years by the various officials of the city government in applying only to the premiums received upon the original policy of insurance upon the property and excluding contracts of reinsurance from liability would have controlling influence upon the courts. (*City of New York* v. *New York City R. Co.*, 193 N. Y. 543, 548.) If there is doubt as to the meaning of the statute, it must be resolved in favor of the taxpayer, for a statute levying a tax is to be construed most strongly against the government. (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51, 57; *City of Rochester* v. *Fourteenth Ward Assn.*, 183 id. 23, 30; *People ex rel. Fifth Ave. Bldg. Co.* v. *Williams*, 198 id. 238, 247.) An assessment upon the amount of business or the value of property is a tax.

Therefore, we conclude from the history of the legislation, the practical construction given thereto by the various city administrations that the money received upon contracts of reinsurance is not subject to the payment of the two per cent exacted on premiums of insurance by section 799 of the Greater New York charter, and that the interlocutory judgment should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and DAVIS, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs. Order to be settled on notice.