People ex° rel. Metropolitan Life Ins. Co. v. Knapp.  413

App. Div.]        Third Department, September, 1920.

" It is the general rule, however, that a complaint when challenged for insufficiency is to be liberally construed and that the pleader is to be deemed to have alleged not only the facts set forth but those also to be implied therefrom by reasonable and fair intendment.   (*Coatsworth* v. *Lehigh Valley R. R. Co.*, 24 App. Div. 273; affd., 156 N. Y. 451; *National Contracting Co.* v. *Hudson R. W. P. Co.*, 170 id. 439; *Ellsworth* v. *Agricultural Society*, 99 App. Div. 119; *Milliken* v. *Western Union Tel. Co.*, 110 N. Y. 403.)" (*Peterson* v. *Eighmie*, 175 App. Div. 113, 115.)

I favor a reversal and a new trial, with costs to the appellant to abide the event.

Kiley, J., concurs.

Order and judgment affirmed, with costs.

---

The People of the State of New York ex rel. Metropolitan Life Insurance Company, Relator, v. Walter H. Knapp and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, September 8, 1920.

Taxation — franchise tax on insurance companies — sums received from sales of annuities should not be considered in computation — Tax Law, section 187, construed — premium and annuity defined — appeal — failure to apply to Commission for revision of tax.

Sums of money received by a life insurance company from the sale of annuities during the years 1914 to 1917, inclusive, are not to be regarded as " premiums " so as to enter the computation which determines the franchise tax assessable against such company under section 187 of the Tax Law.

Premiums and sums paid to procure annuities distinguished and defined.

The court will not review the assessment of a franchise tax where an application to revise the same was not presented to the Commission within one year after the tax was audited and stated.

John M. Kellogg, P. J., and Cochrane, J., dissent, with opinion.

Certiorari issued out of the Supreme Court and attested on the 25th day of October. 1919, directed to Walter H. Knapp

and others, as and constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in making a determination denying an application of the relator for a revision of the franchise taxes levied against relator under section 187 of the Tax Law for the four years ending December 31, 1917. (See Laws of 1917, chap. 796, amdg. said Tax Law, § 187.)*

*Carter, Ledyard & Milburn* [*John G. Milburn, Joseph W. Welsh* and *Leroy A. Lincoln* of counsel], for the relator.

*Charles D. Newton, Attorney-General* [*C. T. Dawes Deputy Attorney-General*, of counsel], for the respondents.

H. T. KELLOGG, J.:

The principal question involved here is whether or not certain sums of money received from sales of annuities annually by a life insurance company during the years 1914 to 1917, inclusive, are to be regarded as " premiums " so as to enter the computation which determines the franchise tax assessable against relator under section 187 of the Tax Law.

The provisions of section 187 of the Tax Law, as they existed during the years named, so far as material, read as follows: " § 187. Franchise tax on insurance corporations. An annual State tax for the privilege of exercising corporate franchises or for carrying on business in their corporate or organized capacity within this State equal to one per centum on the gross amount of premiums received during the preceding calendar year for business done at any time in this State, which gross amount of premiums shall include all premiums received during such preceding calendar year on all policies, certificates, renewals, policies subsequently canceled, insurance and reinsurance during such preceding calendar year * * * shall be paid annually into the treasury of the State on or before the first day of June by the following corporations." The corporations which are then enumerated are " every domestic insurance corporation," " every insurance corporation, incorporated, * * * pur-

---

* Since amd. by Laws of 1919, chap. 625.— [REP.

suant to the laws of any other State of the United States," and " every insurance corporation, incorporated, * * * pursuant to the laws of any State without the United States." Exceptions are then made in favor of certain corporations, but in every instance the corporation to be taxed is described as an *insurance* corporation. The same section provides: " The term ' insurance corporations ' as used in this article, shall include a corporation, association, joint-stock company or association, person, society, aggregation or partnership by whatever name known doing an insurance business in this State." The tax to be laid, therefore, is exclusively a tax on *insurance* corporations, upon corporations " doing an *insurance* business in this State," and it is to be measured by " all *premiums* " received " on all *policies, certificates, renewals, policies subsequently canceled, insurance and reinsurance.*"

The typical case of life insurance is found when a person insured pays annually during his life a stipulated sum to an insurer in consideration of which the insurer engages to pay on the death of the insured a lump sum to a beneficiary. The typical case of an annuity is found where a purchaser pays down a lump sum to a grantor who engages himself to pay a beneficiary during life a stipulated sum annually. In the one case the insurer receives an annual sum during the life of another and pays out a lump sum upon a stipulated death. In the other the grantor presently receives a lump sum and begins to disburse annual payments during life. In the former case the the insured " insures " a dependent or other person against the contingency of his death, and thereby seeks to make indemnity for a possible loss. In the latter case payments are immediately made without regard to the death of the purchaser, and there is no indemnity feature whatever. The one is a provision *for death*, and the other is a provision *for life.* Webster defines " premium " as " The consideration paid, whether in money or otherwise, for a contract of insurance." He defines " insurance " as "A contract whereby, for a stipulated consideration, called a premium, one party undertakes to indemnify or guarantee another against loss by a certain specified contingency or peril." The Century Dictionary defines "premium" as " The amount paid or agreed to be paid in one sum or periodically to insurers as the consideration for a con-

416  People ex rel. Metropolitan Life Ins. Co. v. Knapp.

Third Department, September, 1920.      [Vol. 193.

tract of insurance." It defines " insurance " as "A contract by which one party, for an agreed consideration (which is proportioned to the risk involved), undertakes to compensate the other for loss on a specified thing, from specified causes." Bouvier defines " premium " as " The consideration for a contract of insurance." (Bouvier L. Dict., 3d rev.) It is quite evident that within these definitions a contract for an annuity is not a contract for *insurance*, and that the price paid for annuities is not a *premium* paid for an insurance *policy*. .

The Legislature has itself distinguished between insurance policies and annuity bonds, for in section 70 of the Insurance Law it has authorized thirteen or more persons to become a corporation to write insurance " upon the lives or the health of persons and every insurance appertaining thereto, and *to grant, purchase or dispose of annuities*." Moreover, the Court of Appeals of this State in *People* v. *Security Life Ins. & Annuity Co.* (78 N. Y. 114) has said of annuity bonds: " These are not cases of insurance, and they are not to be governed by any of the rules applicable to life insurance. They are cases simply where for a gross sum paid the company became bound to pay certain sums annually during the life of the annuitants." In a case in Pennsylvania it has been definitely held that sums of money. paid for annuities are not to be regarded as included within the words " premiums of every character " which by statute were made the measure of franchise taxes laid upon foreign insurance corporations doing business in that State.   (See *Commonwealth* v. *Metropolitan Life Ins. Co.*, 254 Penn. St. 510, 516; Penn. Laws of 1911, p. 616, § 16; 5 Purdon's Digest [13th ed.], 6461, § 359.)   We are of the opinion, therefore, that the State Tax Commission was in error when in reckoning a tax laid upon relator in accordance with premiums paid it it included in the computation sums of money with which annuities were purchased.   In so far as the error affected the taxes of relator for the years 1915, 1916 and 1917 the State Tax Commission should correct the same.   The tax for the year 1914 is not reviewable, however, for the reason that an application to revise the same was not presented to the Commission within one year after the tax was audited and stated.   (Tax Law, § 198.)

For these reasons the determination of the State Tax Com-

mission should be reversed and the matter remitted to the Tax Commission for correction in accordance herewith.

All concur, KILEY, J., with a memorandum, except JOHN M. KELLOGG, P. J., dissenting, with an opinion, in which COCHRANE, J., concurs.

KILEY, J. (concurring):

I cannot find that any other term has been used to designate the amount paid for an annuity contract than the word "premium." The relator is doing business under articles of incorporation, a franchise, granted under the laws of the State of New York. It carries on two lines of business, to wit, issues life insurance contracts and sells annuity contracts. It could not engage in either branch of the business without the right or permission conferred and granted by the State. Judge VANN in *People ex rel. Provident Savings Life Assurance Society* v. *Miller* (179 N. Y. 227). makes it plain that the taxes are "upon the privilege of exercising the corporate franchises and carrying on business in a corporate capacity in this State." The amount taken in for doing that business is the basis upon which the State reckons its compensation for the permission and protection given. Note the language of section 187 of the Tax Law, the section involved here: "An annual State tax for the privilege of exercising corporate franchises *or for carrying on business* in their corporate or organized capacity within this State." (See, also, Laws of 1917, chap. 796, amdg. said Tax Law, § 187.)* Then follows the word "premiums," the definition of which is now making trouble for the first time in this State, so far as I can find after quite an extended examination. What other business could the relator carry on except that referred to in the disjunctive clause last appearing in the above quotation, and upon the income from which the tax provided for in section 187 could be levied? Selling annuities is the only other business it is doing under its charter, at least, that is subject to a franchise tax. (See Laws of 1868, chap. 49, § 3.) It seems to me that the Legislature must have understood that this word "premiums" covered

---

*Since amd. by Laws of 1919, chap. 625.— [REP.

the income from the sale of annuities; otherwise this branch of the business would have been specifically exempted from the provisions of the statute. In this connection the argument that the income from the sale of annuities had always been treated as " premiums," by both the State and the insurance companies, is potent. As to the construction given to what is alleged as a similar situation in the State of Pennsylvania, *Commonwealth* v. *Metropolitan Life Ins. Co.* (254 Penn. St. 510, 513) says: "A difference is recognized between the ordinary insurance contract and the granting of an annuity." Notwithstanding what is said at page 515 of that case of *People* v. *Security Life Ins. & Annuity Co.* (78 N. Y. 114), I fail to find any such distinction in this State. It seems that the construction is practically the other way. Here we naturally and easily slide to the next proposition, viz., thirty or forty years' continuous practice in the interpretation of a statute, rule of law, or of business by those who enforce it and by those who operate under it. In *City of New York* v. *New York City R. Co.* (193 N. Y. 543) Judge VANN makes this observation: " Under these circumstances the practical construction of the parties by a uniform course of conduct under all administrations of the city government for more than forty years is of controlling importance. When the parties to a contract of doubtful meaning, guided by self-interest, enforce it for a long time by a consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning, even if as an original proposition they might have given it a different one." (See, also, *Matter of City of New York*, 217 N. Y. 1; *Wintersteen* v. *City of New York*, 220 id. 57; *Bullock* v. *Cooley*, 225 id. 567; *Adamson* v. *Schreiner*, 176 App. Div. 95; *Kings County Lighting Co.* v. *City of New York, No. 2,* Id. 175.) If custom has in fact prevailed, giving to this statute the interpretation as urged by the State, we ought not to reverse the whole policy of the State and exempt from taxation the relator and other corporations similarly situated and acting in harmony with the State for such a long period of time.

As to the application of the rule of practical construction Mr. Justice H. T. KELLOGG raises the question that no evidence appears in the record that warrants a consideration of this

proposition; there seems to be no escape from the force of that objection so far as the evidence produced upon this hearing is concerned. (*Grimmer* v. *Tenement House Department*, 205 N. Y. 549.)

I concur that there must be a reversal.

JOHN M. KELLOGG, P. J. (dissenting):

A franchise tax is imposed for the privilege of doing business in a corporate capacity in the State. A corporation can do no business in the State except pursuant to its charter.

Section 70 of the Insurance Law provides for a corporation " for the purpose of making any of the following kinds of insurance: 1. Upon the lives or the health of persons and every insurance appertaining thereto, and to grant, purchase or dispose of annuities." The relator's charter expressly gives to it such powers, in words similar to that subdivision and section. (Laws of 1868, chap. 49, § 3.) A corporation, other than a life insurance company, cannot be formed in this State for the purpose of granting life annuities. (Ins. Law, §§ 1, 9, 70; Business Corp. Law, § 2.) It must follow, therefore, that the Legislature has considered the granting of annuities to be a part of the life insurance business.

Section 187 of the Tax Law makes it clear that the legislative intent is to impose the tax therein mentioned for all business done by a domestic life insurance company, and that such tax is measured by the premiums received for such business, and for the purpose of clarity the section provides that the term " insurance corporations " shall include every person, society or association " doing an insurance business in this State." That law, and the present Insurance Law were re-enacted at the same legislative session, and may be considered as one act. We must consider that the Legislature intended to impose an equal tax upon all corporations engaged in the insurance business. There is no reason why a life insurance company, which has the power as such to grant annuities, should escape taxation on account of the annuities when it is taxed on account of the life insurance. The act should be construed in a manner which will make it reasonable and just and in a way not to do violence to the legislative

intent.   The language used will permit the tax, and justice to other taxpayers, as well as to the public, requires that it should be sustained.

A life insurance policy may issue for a single payment or for payments annually or quarterly, as may be agreed upon. However it is paid, the premium represents the share which the insurer should contribute towards the expense, management and profit of the business, leaving with the company a sum for investment which, according to the mortality tables and the Insurance Law, will produce a sum sufficient to meet the policy at its probable maturity.   Losses are payable from the accumulated savings of the various policies.   If the insured lives the ordinary expectation of life, his beneficiary receives the amount paid in by him, with interest compounded, less the deductions mentioned.

A life annuity operates in the reverse way; the company takes from the insured a single payment, in that respect it being substantially like a single premium life policy.   The company treats the sum to be paid as the basis of its policy, returning to the beneficiary during his life, in regular payments as provided by the policy, such sums as the initial payment may justify.   The payments to be made by the company depend upon the life of the person making the payment, or the annuitant mentioned, so that payment in either case depends upon a human life.   The company, in either case, for a consideration, agrees to make certain payments during the life, or at the end of life.   The risks are substantially alike, but the manner in which the company computes and pays the value of its contract is arrived at in different ways.   In effect, under the law, an insurance company is a savings institution which uses the trust funds committed to it for the payment of the life policy to the insured or for the life annuity to the annuitant.   In either case it is paid for the life risk.   The Legislature, with reason, considered the business of granting annuities as a life insurance business and the consideration for it a premium.

The company's original source of income is its premiums. Its rents, its interest and dividends are mere incidents arising from the premiums, and represent the earnings on such premiums, and for that reason are not taxed.   But the premium,

the only source from which the company can derive an original income, is by the Tax Law intended to be taxed.

We are not particularly interested in the exact form of expression or the exact meaning of a word in a statute. We are always interested in the legislative intent, and, when that intent is plain, it is easy to read the language used, giving it, so far as may be without violence, even at the expense of correct expression, its clearly intended meaning. The words are forms only intended to convey the meaning, and the words mean what the statutory intent requires, unless the positive words of the statute exclude such construction. The word " premium," when we know the legislative intent from the general purport of the law, may as well cover a payment for a life annuity policy as for a life policy. The Century Dictionary defines it as " a reward; a recompense given for a particular action or line of conduct. * * * In insurance, the amount paid or agreed to be paid in one sum or periodically to insurers as the consideration for a contract of insurance." I favor affirmance.

COCHRANE, J., concurs.

Determination annulled, and matter remitted to the Commission for its further consideration, with fifty dollars costs and disbursements.