JOHN M. BRAINARD, WALTER L. HAEHNLEM, CHARLES E. FEARON, THEODORE W. CASE, Individually; THEODORE W. CASE and JOHN TABER, as Trustees of and under the Last Will and Testament of WILLARD E. CASE, Deceased, for the Benefit of DOROTHY CASE, CAROLINE B. WOODRUFF, NELSON B. BURR and NELSON B. ELDRED, as Surviving Trustees of and under the Last Will and Testament of NELSON BEARDSLEY, Deceased, Plaintiffs, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY and THE MAHONING COAL RAILROAD COMPANY, Defendants.

Supreme Court, New York Special Term, April, 1924.

Railroads — taxation — lease of railroad in perpetuity executed in 1884 — lessee liable for federal income tax assessed in 1920 — practical construction of lease by parties controlling.

The lessee of a railroad under a lease in perpetuity executed in 1884 is liable for federal income taxes assessed against the property in 1920 where it appears that under the lease the entire property of the lessor, including its franchises, except its corporate franchise, was to be held, managed and operated by the lessee, which was to collect and receive all income and divide and share with the lessor the gross earnings in the proportion of forty per cent to the lessor and sixty per cent to the lessee, but the said forty per cent was to be sufficient to pay interest on certain bonds of the lessor, also dividends on certain stock and the cost not exceeding a certain amount of maintaining the corporate organization of the lessor; that the lessee was to have like powers and rights " subject to like duties and obligations " then existing or as might in future " be imposed upon " said lessor, and the lessee expressly covenanted that it would " observe and perform such duties and obligations in like manner as the said Mahoning Company (lessor) would be bound to do; " that it would " pay all taxes and assessments " which might be levied or " become chargeable " on said property, and where it further appears that the lessee had voluntarily paid all taxes for more than ten years, and that the same construction had been placed by the same parties upon certain other minor leases, which leases contained similar clauses as to the payment of taxes.

ACTION in equity to compel reimbursement for taxes assessed and paid.

*Beardsley, Hemmens & Taylor (Thomas H. Beardsley,* of counsel), for the plaintiffs.

*Alexander S. Lyman (Frederick L. Wheeler,* of counsel), for the defendant The New York Central Railroad Company.

*Charles C. Paulding (Crosby J. Beakes,* of counsel), for the defendant the Mahoning Coal Railroad Company.

DELEHANTY, J. The plaintiffs, as minority stockholders of the defendant corporation the Mahoning Coal Railroad Company,

acting for themselves and for all other stockholders similarly situated, and also in behalf of said defendant company, seek to obtain a decree herein directing the codefendant, the New York Central Railroad Company, to reimburse said Mahoning Company for $480,425.20 paid by said company in 1921 for federal taxes assessed against it in 1920. The plaintiffs contend that such payment was made pursuant to direction of the New York Central Company, which controls the Mahoning Company; that such taxes should have been paid by the New York Central itself under the provisions of a certain lease of July 1, 1884, between said Mahoning Company, as lessor, and the Lake Shore and Michigan Southern Railroad Company, as lessee, of which the New York Central is the successor lessee, and has assumed all the obligations of the Lake Shore Company under the said lease. All the material facts have been stipulated and are not in dispute. The Mahoning Company is an Ohio corporation owning a railroad within that state. In December, 1871, it made a traffic agreement with the said Lake Shore Company, and in 1873 a supplemental agreement was made whereby the Mahoning Company transferred its entire road and property to the Lake Shore Company, to be managed and operated by the latter company for a period of twenty-five years on certain terms and conditions, including a voice by each party in fixing rates and tariffs and a covenant by the Lake Shore Company to " pay all taxes on the property so operated by it." Both of these agreements were abrogated by the said lease of July 1, 1884, which made certain radical changes in that the new lease was to continue " in perpetuity," the Lake Shore Company was to have the sole right to make and alter rates and the clause as to the payment of taxes was made far more comprehensive. Under this lease the entire property of the Mahoning Company of every kind and description, including its franchises, except its corporate franchise, was to be continued to be held, managed and operated by the Lake Shore Company, which was to collect and receive all the income from such operation and divide and share with the Mahoning Company the gross earnings of said road in the proportion of forty per cent thereof to the Mahoning Company and sixty per cent thereof to the Lake Shore, but that the said forty per cent should be sufficient every six months to pay the half year's interest on the $1,500,000 of bonds issued by the Mahoning Company, also the half year's dividends of two and one-half per cent upon any preferred stock of the Mahoning Company not exceeding $400,000 in amount issued, and also the cost, not exceeding $1,000 per annum, of maintaining the corporate organization of the Mahoning Company. The lease also provided: " That

said Lake Shore Company, in consideration of the premises, does on its part covenant and agree * * * that it will, during the continuance of this indenture, work and operate the said road of said Mahoning Company in all respects in like manner as it would be bound to do and would do were it the owner thereof, with like franchises, powers, rights and privileges as the said Mahoning Company now possesses, and subject to like duties and obligations as now rest or may hereafter be imposed upon said Mahoning Company with reference to the premises, and will observe and perform such duties and obligations in like manner as the said Mahoning Company would be bound to do were it maintaining and operating such road in its own name * * * and that it will indemnify and save harmless the said Mahoning Company against all liability, actions, damages and losses which may in any manner arise from or on account of any act or omission " of said Lake Shore Company. " That it will in due season pay all taxes and assessments which may be levied or become chargeable on the said road, or property, or upon the said Mahoning Company by reason of its ownership thereof." Thus, in most comprehensive terms, the intent is disclosed that the Lake Shore Company was to stand in the shoes of the Mahoning Company with like powers and rights and " subject to like duties and obligations " then existing or as might in future " be imposed upon " said Mahoning Company, and the Lake Shore Company expressly covenanted that it would " observe and perform such duties and obligations in like manner as the said Mahoning Company would be bound to do;" that it would " pay all taxes and assessments " which might be levied or " become chargeable " on said property, " or upon the said Mahoning Company, by reason of its ownership thereof." The intent of the parties as gathered from the entire lease and from the facts of the situation, was that the forty per cent of the gross earnings to be paid to the lessor company was not to be reduced by any expenses or obligations other than those expressly mentioned as the interest on the said bonds, and the dividends upon the said preferred stock and the $1,000 as the annual cost of maintaining the corporate organization of the lessor company. This intent is made more evident from the facts that the lessor had parted with all its property and all control thereof, not merely for a period of twenty-five years, but " in perpetuity," and had also surrendered to the lessee all its rights to fix rates for transportation prior to the Interstate Commerce Act of 1887, and had merely reserved the shell of its corporate organization. As taxes are a part of the expenses of operation of a railroad company and are to be considered in fixing rates of transportation, it becomes

evident that it was the intention of the parties that the lessee having the power to readjust rates to cover the expense of taxes, should pay all taxes of every kind and nature whether levied against the property itself or " chargeable " upon " the said Mahoning Company by reason of its ownership thereof." Although the federal income tax was not in force in 1884, yet such income taxes had formerly been levied during and after the Civil War, and the parties must have contemplated that the lessor might be " chargeable " with any form of taxation including a tax upon the net income derived directly or even indirectly by it " by reason of its ownership " of the said road. As it was the intent of the parties that the lessee should bear every operating expense, and should pay every tax of every name and description, it becomes unnecessary to discuss the technical nature of an income tax, or to review the numerous cases cited by counsel relating thereto. The lessor itself having no property left to operate, derives its entire income from the forty per cent of the gross earnings of its road, and from certain interest returns upon such earnings and the investment thereof. Hence all its taxes result directly or indirectly " by reason of its ownership " of its road, and the mere fact that the lessor has thus indirectly and incidentally derived other income from interest, etc., does not relieve the lessee from its obligation to " pay all taxes " of every kind and nature in accord with the intent of the parties as disclosed by the entire lease, and the surrounding facts, and not merely by the particular words of the tax clause itself which was evidently intended to be as broad as possible. But whether or not as an original question the federal income tax would be technically " chargeable " upon the lessor company by reason of its ownership of its road and property every doubt as to the intent and meaning of the parties has been entirely dispelled, and the proper interpretation of the lease in question has been conclusively established by the practical, uniform and continuous construction placed upon the lease by the parties themselves. In *Woolsey* v. *Funke*, 121 N. Y. 87, 92, the court, per Peckham, J., said: " The language is somewhat ambiguous or indefinite. Under such circumstances the practical interpretation of this agreement by both parties is a consideration of very great importance. As was said by Mr. Justice Swayne in *Insurance Company* v. *Dutcher*, 95 U. S. 269, 273: \* \* \* ' There is no surer way to find out what parties meant than to see what they have done. Self-interest stimulates the mind to activity and sharpens its perspicacity. Parties in such cases often claim more, but rarely less than they are entitled to.' " In *City of N. Y.* v. *N. Y. City Ry. Co.*, 193 N. Y. 543, 548, the court, per Vann, J.,

said: "When the parties to a contract of doubtful meaning, guided by self-interest, enforce it for a long time by a consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning, even if as an original proposition they might have given it a different one." See, also, *Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1, 14. In the instant case it is conceded that the Lake Shore Company, the original lessee, paid all the taxes of every kind and nature that were assessed and levied or "chargeable" to the said lessor company, including the federal income tax, from the year 1909 until December, 1914; and that the New York Central Company, as the successor lessee, which assumed all the obligations of the Lake Shore Company when that company was merged in the New York Central in December, 1914, also paid all such taxes of every kind, including all the federal income and excess profits taxes assessed against the said Mahoning Company from December, 1914, until March, 1921, when it paid the first installment, due March 15, 1921, for such federal taxes assessed against the lessor company for the year 1920, but refused to pay the three remaining installments of taxes involved in this action. This practical and uniform construction thus placed by the parties upon the meaning and intent of the lease in question is made still more significant and conclusive by the fact that the same construction was also placed by the same parties upon certain other minor leases of three other small railroads, two of which were situated in Pennsylvania and one in Ohio, which leases contained similar clauses as to the payment of taxes. In fact, some of the taxes so paid by the New York Central Company were upon gross earnings and were excise taxes, and these are still being paid without question by that company. The contention that these federal income and excess profits taxes were "paid through inadvertence and mistake" is entirely without merit. No evidence is offered or fact is stipulated in support of such a contention, and it is incredible that able counsel for large corporations should not have discovered such a "mistake" in the course of more than ten years of such voluntary payments. A more obvious explanation is that these taxes for the year 1920 were so large and burdensome that the sudden change in policy was rather due to the conceded fact that the New York Central owns the majority of the capital stock of the Mahoning Company and that at the time of such change a majority of the board of directors of that company were also directors of the New York Central, and that every one of the ten officers of the Mahoning Company were the same ten officers in the New York Central Company, including the president, vice-president, secretary

and treasurer. Manifestly, therefore, the Mahoning Company had no real independent voice in the matter as affecting the interests of its minority stockholders. Judgment must, therefore, be awarded to the plaintiffs as prayed for in the complaint. Findings have been passed upon. Submit consolidated findings and decree upon notice.

Judgment accordingly. _____