In the Matter of American Credit Indemnity Company of New York, Petitioner, v. State Tax Commission of the State of New York, Respondent.

Third Department, November 14, 1968.

*Aranow, Brodsky, Bohlinger, Einhorn & Dann* (*Alfred J. Bohlinger, Alfred Miller* and *Victor M. Rosenzweig* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Ruth Kessler Toch* and *Edwin R. Oberwager* of counsel), for respondent.

GIBSON, P. J. By this proceeding, brought pursuant to article 78 of the CPLR, petitioner seeks review and annulment of determinations of the State Tax Commission which sustained assessments of additional franchise taxes for the years 1960–1964, inclusive.

The proceeding presents the question whether collection fees earned, pursuant to the terms of a contingent fee schedule embodied in a credit insurance policy, upon the collection by the insurer of accounts of the insured's trade customers, are subject to the franchise tax specifically levied on " premiums ". At the times of the assessments now before us, the Tax Law (§ 187, subd. 1), so far as here pertinent, and with exceptions not material to our decision, imposed upon every domestic insurance corporation an annual franchise tax of " two per centum on all gross direct premiums * * * written on risks located or resident in this state ".

Petitioner is a domestic stock insurance corporation engaged in the business of writing credit insurance, " the scope of [that] kind of insurance business " being defined as follows: " 17. ' Credit insurance,' meaning indemnifying merchants or other persons extending credit against loss or damage resulting from the nonpayment of debts owed to them; and including the incidental power to acquire and dispose of debts so insured, and to collect any debts owed to such insurer or to any person so insured by him." (Insurance Law, § 46, subd. 17.)

The credit insurance policy issued by petitioner provides, under its conditions designated " 4 — Notification and Filing of Claims ", that when a debtor whose account is thereby covered becomes insolvent, within the policy definition of that term, the insured within a specified time after acquiring knowledge thereof " shall file Notification of Claim with the Company on a form furnished by the Company and place the entire account with the Company for attention and collection ". Under a paragraph headed " Free Service ", the policy provides that no charge will be made on any collection effected on any undisputed or unlitigated account, insofar as covered, provided the debtor, at date of filing, is insolvent.

Under the policy conditions designated " 2 — Optional Filing of Past Due Accounts ", the insured is " permitted " to file with the company, for collection, an account against a debtor who is not insolvent, accompanied by a notification of claim as described in condition 4. The policy provides that on collections of accounts in this category — those of debtors who are not insolvent — the insured shall pay " charges " according to the sliding scale schedule of percentages specified in the policy.

Petitioner's brief characterizes this procedure under condition 2 as an accommodation collection service, obtainable at the option of the insured prior to the time that a delinquent account becomes a claim under the policy by reason of the insolvency of the debtor; for which service the insured pays a separate fee, but only when and if this optional collection service shall be requested and rendered.

As has been indicated, the franchise tax is upon " premiums " and the meaning of that term as used in the taxing statute (Tax Law, § 187, subd. 1) is the critical issue. The Tax Law provides no explicit definition; but, in general, the term "may be defined as the agreed price for assuming and carrying the risk— that is, the consideration paid an insurer for undertaking to indemnify the insured against a specified peril ". (29 Am. Jur., Insurance, § 501.) The term "premium " has also been simply and authoritatively defined as the consideration paid for a contract of insurance; this in *People ex rel. Metropolitan Life Ins. Co.* v. *Knapp* (193 App. Div. 413) which was affirmed (231 N. Y. 630) on the opinion in the Appellate Division of H. T. KELLOGG, J., in which this definition appeared. The respondent commission would have us look also to subdivision 1 of section 550 of the Insurance Law, in pertinent part providing: " 1. As used in this article the following terms shall have the meanings herein assigned to them, unless the context otherwise requires: * * * ' Premium ' includes all amounts received as consideration for insurance contracts or reinsurance contracts, other than for annuity contracts, and shall include premium deposits, assessments, policy fees, membership fees, and every other compensation for such contract.'' In *Matter of Guardian Life Ins. Co. of America* v. *Chapman* (302 N. Y. 226, 231), involving the construction of another provision of section 187 of the Tax Law, the court found it helpful to refer to provisions of sections 550 and 552 of the Insurance Law, noting that " both statutes deal with the same general subject matter and are obviously *in pari materia* [and] must be read together and applied harmoniously and consistently.'' Petitioner argues that resort should not be had to section 550, inasmuch as the effect thereof is, in terms, restricted to article 17, dealing with taxes and fees payable by foreign and alien insurers; but this same distinction in *Guardian* (*supra*, p. 231, n.) did not inhibit recourse to two of the sections of article 17 in aid of the court's construction of the Tax Law provisions in dispute.

We look, then, to subdivision 1 of section 550, primarily as a guide; but if we were to adopt, conclusively and in full, the definition of premium there formulated, it would not necessarily

follow that the insurer's contingent fees for the collection of accounts not constituting claims under the policy would have to be found to be "other compensation for such [insurance] contract", in the language of subdivision 1. We consider, on the contrary, that the collection fees cannot be thus categorized.

We find no basis in precedent, and perceive none in reason or logic, for the contentions that a collateral or incidental benefit offered by the policy becomes, of necessity, an insurance contract and that the Legislature's grant of the "incidental power to acquire and dispose of debts so insured, and to collect any debts owed to such insurer or to any person so insured by him" (Insurance Law, § 46, subd. 17) indicates an intent, not particularly consistent with the plain language employed, to recognize a new form of insuring clause, for which an additional premium could be charged, or to do more than to confirm and supplement the insurer's subrogation rights. It is to be noted that the statutory reference to the granted power as "incidental" is to some extent at odds with the commission's finding that "the taxpayer's collection activities are an *integral* part of its insurance business" (emphasis supplied), a finding which, in any event, seems to us to have no support, in the record nor in the clearly distinguishable case of *Matter of City Tit. Ins. Co.* v. *Superintendent of Ins. of State of N. Y.* (31 Misc 2d 1012, affd. 16 A D 2d 768, affd. 13 N Y 2d 686), cited by respondent. As supportive of its conclusion that the "collection procedures and receipts of collection fees are an integral part of the policy", the commission found "that the insured  *  *  *  contracts to place the entire account  *  *  *  with the insurer for collection and to pay the collection fees; that the insured's failure to place the entire account with the insurer for collection results in lapse of insurance on the entire account or any portion thereof for which insurance may be afforded under the policy"; but, recalling that the only fees payable are those upon collections of accounts which have not become claims under the policy and the referral of which to the insurer is purely optional, it is clear that these findings have no substantial evidentiary support and are, indeed, contrary to uncontradicted testimony.

We observe, further, not merely as demonstrative of possible error in the computation of the assessments, assuming they were otherwise proper, but as indicative, also, of the true nature of the payments and provisions for payment of collection fees, that an analysis of the accounts received for collection disclosed, and the commission accordingly found, that "in the calendar year 1964, and with only a slight variance for the years under review, 25.7% of accounts received for collection were not

covered by credit insurance issued by the taxpayer ", for one or more of the various reasons noted in the finding.

In sum, the optional provision for enlisting the services of the company as a collection agency to collect accounts which have not become claims under the policy, which may never become such, and which, indeed, may not even be insured under the policy, seems to us independent of the insuring provisions for which consideration is paid in the form of a premium calculated according to the risk. The payment of a fee, additional to the basic premium, for collateral benefits extended under a policy does not necessarily constitute the payment of a premium or additional premium; and there seems to us no significant difference in principle between the collection fees in the credit insurance policy before us and the charges for annuity contracts in *People ex rel. Metropolitan Life Ins. Co.* v. *Knapp* (193 App. Div. 413, 416, affd. 231 N. Y. 630, *supra*) in which this court held, despite the extremely broad language of section 187 as then constituted, that "a contract for an annuity is not a contract for *insurance*, and that the price paid for annuities is not a *premium* paid for an insurance *policy*"; this even before subdivision 2 of section 187 was amended (L. 1938, ch. 128) to exclude from the definition of "premiums" any amounts received as consideration for annuity contracts. Here, the collection fee is payable for the performance of services, and, indeed, is contingent upon the successful performance of services, and is not "dependent upon the happening of a fortuitous event [which is] to a substantial extent beyond the control of either party" to the insurance contract. (Insurance Law, § 41, subd. 1.)

We find unavailing respondent's additional argument that the "literal interpretation of the word premium" urged by petitioner would defeat the purpose of the franchise tax by partially exempting credit insurance corporations from the full tax imposed upon other business corporations for the privilege of exercising corporate franchises. Had the Legislature intended to tax all the New York income of such insurance companies, rather than the portion thereof derived from premiums, it could have readily and simply so provided. We find in the authorities cited by respondent nothing militating against the construction at which we have arrived.

The determinations should be annulled and the petition granted, with costs.

REYNOLDS, AULISI, STALEY, JR., and GABRIELLI, JJ., concur.

Determinations annulled and petition granted, with costs.