## STATE EX REL. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. HAM, INSURANCE COMMISSIONER

(No. 1902; March 21, 1939; 88 Pac. (2d) 484)

For the relator, the cause was submitted upon the brief of *John U. Loomis*, of Cheyenne.

For the respondent the cause was submitted upon the brief of *Ray E. Lee,* Attorney General; *Thomas F. Shea,* Deputy Attorney General; and *Wm. C. Snow,* Assistant Attorney General, of Cheyenne.

BLUME, Justice.

This is a direct action in this court to enjoin the insurance commissioner of this state from revoking the license of the plaintiff to do business as a life insurance company in this state. The facts have been stipulated, the material ones being hereinafter set out.

For many years the plaintiff has been licensed to do business as a life insurance company in this state, and held such license at the time hereinafter mentioned. On July 19, 1934, the insurance commissioner wrote to the plaintiff that it had come to his attention that companies generally were not reporting annuity considerations for tax purposes, and that he wanted such report and payment of taxes thereon for the years 1929 to 1933 both inclusive. After some correspondence between the parties and after refusal of the plaintiff to pay such taxes the insurance commissioner, on October 23, 1934, wrote to the plaintiff that its license would be revoked on November 1, 1934, unless the tax demanded were paid prior to that date. Thereupon this action was commenced. It was stipulated that:

"The granting or creation of annuities is generally not confined to insurance companies. The annuity contracts sold by such life insurance companies as engaged in an annuity business are ordinary unconditional agreements for the payment to the annuitant of a fixed income annually, or at other stated intervals during the life of the annuitant. The consideration for the contract is usually paid by the annuitant, and may be paid either in the form of a single sum, or in the form of periodic payments, in which case the income payments do not commence until after the termination of the periodic consideration payments. Such consideration is dependent upon the age of annuitant, the amount, frequency and period of the income payments, and the method of payment of the consideration, and is calculated according to special tables of mortality among annuitants. For all annuity contracts the company maintains a reserve which is calculated according to tables of mortality as a sum, which, together with interest and future considerations as they become due, will be just sufficient to meet future income payments as they become due."

It is further stipulated that until recently the volume of annuity business transacted by life insurance companies has been comparatively small, but has increased

sharply during recent years, particularly during the existing depression; that no demands for taxes due upon considerations paid on annuity contracts had heretofore been made of plaintiff, although considerations for such annuities were reported by the plaintiff in its annual reports, without, however, separating those pertaining to the State of Wyoming; that plaintiff has no forms for use in connection with the collection of considerations due it under annuity contracts written by it; that most of the annuity contracts entered into by the plaintiff with persons residing in the state of Wyoming require the payment of single or lump sums, although in a few instances the payment is made by instalments; that each annuity contract and each application state that the consideration is a premium; that the plaintiff charges the same premium or consideration for annuities of the same class in all states in which it issues annuity contracts; that no annuity forms have been filed in Wyoming later than June, 1930, except survivorship annuity forms which the plaintiff reports as life insurance and upon which it pays premium taxes as life insurance in Wyoming and elsewhere.

The statute under which the taxing power is claimed is Section 115-117, R. S. 1931, which was passed during the session of 1897, reading, in so far as material here, as follows:

"There is hereby imposed and levied upon each and every insurance company transacting the business of insurance within this state, a tax of 2-1/4 per centum per annum upon the gross premiums received by it for insurance within this state."

This law was amended by Ch. 48 of the Session Laws of 1935, which specifically taxes premiums received on annuity contracts. Other statutes pertinent herein or to which reference has been made are as follows: The Session Laws of 1877, on page 59, provided that an

insurance company had the right "to make insurance on the health of individuals, and against the personal injury, disablement or death resulting from traveling or general accident by land or water." That remained the law until 1911, when it was provided by Section 1 of Chapter 50 of the Session Laws of that year that an insurance company should have power "to make insurance upon the lives and health of persons and every insurance appertaining thereto or connected therewith, and to grant, purchase or dispose of annuities." An insurance code was adopted in 1921, and the wording of the right to issue policies of insurance as well as of annuities was changed to some extent, reading as follows (now Section 57-408, R. S. 1931) :

"To issue contracts of insurance covering all forms of life contingencies and also all forms of accidental death, bodily injury or disease, issue all forms of endowment contracts, and grant, purchase and dispose of annuities."

Section 57-223 provides that corporations which issue life insurance policies or annuities shall be deemed to be life insurance companies. Section 57-225 speaks of "life insurance and annuity obligations." Section 57-228 provides for the valuation of annuities. We are referred to a portion of Section 57-224 reading as follows:

"When the actual premium charge hereafter for an insurance by any life insurance company or association doing business in this state, is less than the net premium for such insurance computed according to the table of mortality, and rate of interest prescribed in this article, such company shall be charged as a separate liability with the value of an annuity, the amount of which shall be equal the number of future annual premiums due on such insurance at the date of valuation."

The sole question presented in this case is as to whether or not premiums, or considerations paid for

annuity contracts, are premiums for insurance taxable within the meaning of section 115-117, supra. The authorities under similar statutes are not uniform. In New York Life Ins. Co. v. Sullivan (N. H.) 192 Atl. 297, and Northwestern Mutual Life Ins. Co. v. Murphy (Iowa) 271 N. W. 899, 109 A. L. R. 1054, both decided in 1937, it was held that such premiums were taxable. These cases are distinguishable from the case at bar, as pointed out in the North Dakota case hereinafter cited, in that (without attempting any further analysis) in both instances the law provided that the life insurance company should pay a tax of a certain per cent of the premiums received by them for business in the state. Four cases hold, on the contrary, that considerations paid for annuities cannot be considered as premiums received for insurance, namely, Commonwealth v. Metropolitan Life Ins. Co., 254 Pa. 1072, 98 Atl. 1072 (1916) ; People ex rel. v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, affirmed without opinion in 231 N. Y. 630, 132 N. E. 916 (1920) ; Daniel v. Life Ins. Co. (Tex. Civ. App.) 102 S. W. (2d) 256; State v. Equitable Life Assurance Soc. (N. D.) 282 N. W. 411. In the New York case it was said that the legislature itself had distinguished between an insurance policy and an annuity bond, in that it had authorized persons to write insurance "upon the lives and the health of persons and every insurance appertaining thereto and to grant, purchase or dispose of annuities." It may be noted that our statute reads very similarly. The court further said:

"The typical case of life insurance is found when a person insured pays annually during his life a stipulated sum to an insurer in consideration of which the insurer engages to pay on the death of the insured a lump sum to a beneficiary. The typical case of an annuity is found where a purchaser pays down a lump sum to a grantor, who engages himself to pay a beneficiary during life a stipulated sum annually. In the

one case the insurer receives an annual sum during the life of another and pays out a lump sum upon a stipulated death. In the other the grantor presently receives a lump sum and begins to disburse annual payments during life. In the former case the insured 'insures' a dependent or other person against the contingency of his death, and thereby seeks to make indemnity for a possible loss. In the latter case payments are immediately made, without regard to the death of the purchaser, and there is no indemnity feature whatever. The one is a provision for death, and the other is a provision for life."

In the Texas case, the court said, among other things:

"From a careful examination of the authorities upon the subject, it is quite manifest that in general parlance insurance does not include contracts of annuity. This has been the invariable holding wherever the subject has reached the courts for decision. * * * * We are not here concerned with annuities created by deed or will, which are of ancient origin. The granting of annuities by corporations upon consideration paid is a more recent practice. It appears to have been engaged in first by insurance companies to which it is largely confined at the present day. It is essentially a form of investment, and uniformly held to be purely such, regardless of the fact that in its usual form payments are contingent upon continuity of the life of the grantee. In some forms of annuity, not even this contingency exists. The fact of the existence of such contingency is held not to bring it within the classification of insurance, which generally speaking, is indemnity for loss suffered from some risk. In a broad and general sense investment may be said to have the same objective. The uncertainties arising from a constantly changing business and economic world involve an infinite variety of risks, security or insurance from which men constantly seek through investment of various kinds. But this is not the character of insurance or risk which is connoted in the business of writing insurance policies. The terms have a more narrow and restricted meaning. For many years there has been an evergrowing tendency of life insurance companies to encroach upon the field of investment by loading their policies with an increasing variety of purely investment features. This

fact, however, does not affect the character of a contract made by an insurance company as to whether it is insurance vel non, nor does it broaden the definition to include as insurance that which is not in fact properly so classified."

And the court, holding that considerations for annuities are not premiums, further stated:

"This is especially true in view of the general rule that statutes creating taxes are strictly construed and not extended by implication beyond the clear import of the language used. Such laws are to be interpreted liberally in favor of the taxpayer. * * * Had the legislature intended to include considerations paid for annuities within the amounts upon which the tax was to be computed it would have been a simple matter to so state. 'Doubt, if any arises, must be resolved against the right to make the exaction.' "

The North Dakota case was decided in May, 1938, and is particularly interesting in view of the fact that the course of legislation in that state relating to the subject before us was very similar to the course of legislation on the same subject in this state. The taxing statute was passed in 1885. The law authorizing companies to write annuities was passed in 1891. The court held that this fact was important, since it showed that the legislature itself recognized the fact that there is a difference between the ordinary life insurance and annuities. Further, the executive department had not, just as is true in the case at bar, for some years demanded a tax upon the considerations paid for annuities, and the court held that that fact should be taken into consideration.

The foregoing cases cite numerous other authorities, indirectly bearing upon the subject before us and considering it exhaustively, so that it would subserve no good purpose for us to do so here. We may, however, be permitted to refer specifically to the following: In

the case of Carroll v. Equitable Life Assurance Soc., 9 Fed. Supp. 223, the court said:

"An examination of the authorities does not warrant the conclusion that an annuity contract is an insurance contract. It may be defined as 'a yearly payment of a certain sum of money granted to another in fee for life or for years, and charging the person of the grantor only." 2 R. C. L. § 1, p. 2. The granting of such contracts is not limited to insurance companies. The granting of annuity contracts is in the nature of an investment and has very little to do with mortality tables. The only case where a mortality table would be involved is where the annuity is granted for the life of an individual. In such case, the grantor would, of course, take into consideration the 'expectancy' of such person under accepted mortality tables. * * * * The annuity contract is almost the reverse of an insurance policy. In the insurance contract, the assured pays the premium, in consideration whereof the company agrees to pay a stipulated sum upon his death. In an annuity, the annuitant pays a stipulated sum, and thereafter annual payments are made to the annuitant."

And in 3 C. J. S. 1375, it is said:

"An annuity contract comprehends few of the elements of an insurance contract. The former is distinguished from the latter in that insurance, as generally understood, is an agreement to indemnify against loss in case of property damaged or destroyed or to pay a specified sum on the death of insured or on his reaching a certain age, while an annuity is generally understood as an agreement to pay a specified sum to the annuitant annually during life. The consideration for an insurance contract is generally termed a premium and is payable annually, semi-annually, monthly, or weekly; the consideration for an annuity contract is not generally regarded as a premium and is usually covered by a single payment."

The Attorney General has referred us to the clause of section 57-224, supra, above quoted. That appears to us to be obscure, and the briefs have not attempted to shed any light thereon. We are not sufficiently versed

in life insurance matters to decipher its exact meaning. The clause has been cited to us to show the connection between "annuities" and "premiums." On the contrary, the direct connection of premium seems to be with an ordinary insurance policy for which less than the ordinary amount is charged, and which is, accordingly, under the provisions of the law, by reason of such fact converted into an annuity for the purpose of accounting. The Attorney General also relies on section 57-223, supra, which provides that companies writing life insurance or annuities shall be considered life insurance companies. A statute similar to that has been considered in two cases, namely, in Daniel v. Life Ins. Co., supra, and Mutual Benefit Life Ins. Co. v. Commonwealth, 227 Mass. 63, 116 N. E. 469. In the first of these cases the court held that the statute should be construed merely as enumerating the kinds of business which such company was authorized to do, and could not be construed as implying that premiums paid for annuities could be taxed, although the taxing statute in that case was passed subsequent to the statute which defined life insurance companies. In the second of the above cases it appears that the legislature passed a statute similar to Section 57-223, supra, in 1907. In 1909 (amended in 1915) the legislature provided that life insurance companies should pay a tax on all policies written in the state. It was held that in view of these statutes a tax was payable on policies of annuities. We see no reason to question the soundness of that decision, or to refuse to follow it, if the legislation and the course thereof in this state had been what it was in Massachusetts. It is clear, however, that when section 115-117, supra, was passed in 1897 no premiums on annuities were contemplated by the legislature, since no companies were authorized to write policies for annuities until 1911. And section 57-223, supra, which defined life insurance companies, was not

passed until 1921. The statute containing that provision was intended as an insurance code. It did not purport to be a taxing statute, and to hold with the contention of the attorney general, it would be necessary to hold that the provision of 1921 extended the meaning of the statute of 1897 by implication. We do not think that we can do so.

Some annuities partake of the nature of insurance in view of the fact that the consideration paid depends on the expectancy of life of the annuitant according to the mortality tables. On the other hand there can scarcely be any doubt that all annuities also partake of the nature of investment. Hence it is not a matter of surprise that the greater number of courts which have had occasion to pass on the matter, have drawn a distinction between insurance and annuities in construing statutes imposing taxes, for such statutes are, in case of doubt, ordinarily construed in favor of the tax payer. And we think that, in view of the course of legislation in this state, already outlined, we should hold with the majority of the courts. If we were inclined otherwise, it would seem that the second part of Equitable Life Assurance Soc. v. Thulemeyer, 49 Wyo. 63, 91, 52 P. (2d) 1223, would induce us to do so. In that case, as in this, section 115-117, supra, and the amendment thereof in 1935 were under consideration, and the only difference is that in that case we considered group insurance while in this case we are considering annuities.

The Attorney General points to section 6 of article 10 of the state Constitution providing that "no corporation shall have power to engage in more than one general line or department of business, which line of business shall be distinctly specified in its charter of incorporation." He then argues that if the annuity business is not life insurance business, but is a distinct line of business, then the plaintiff has no authority to transact an annuity business in the state, and the in-

surance commissioner should not issue it a license unless it renounces the right to do such business. We are not, of course, called upon by this argument to determine whether the business of writing annuities is a distinct line of business from that of writing life insurance within the meaning of the constitutional provision above mentioned. The statute, as we have already seen, empowers the plaintiff, as a life insurance company, to write annuities, and the constitutionality of the statute is not attacked. As we have already seen, the fact that the plaintiff is authorized to write annuities does not determine the point as to whether or not considerations paid for such annuities were taxable under the law of 1897. The prayer of the petition will accordingly be granted.

RINER, Ch. J., and KIMBALL, J., concur.