In the Matter of the Estate of KENNETH PORTER, Deceased.

Surrogate's Court, Nassau County, October 19, 1945.

*Joseph P. Walsh* for Janet Porter, as executrix of Kenneth Porter, deceased, appellant.

*Fred M. Ahern* for State Tax Commission.

HOWELL, S. The sole question presented is whether the amounts in question were receivable " as insurance under policies taken out by the decedent upon his own life " and therefore required to be included in the gross estate " to the extent that such amount is required to be included in the gross estate under the provisions for the taxing of estates contained in any revenue act of the United States applicable to the estate of the decedent " (Tax Law, § 249-r, subd. 9) so as to be exempt insofar as such amount " does not exceed one hundred thousand dollars less the aggregate of any exemptions otherwise allowable under this section." (Tax Law, § 249-q, subd. c.)

The Penn Mutual policy was in the " principal sum " of $36,405.20. Its " maturity date " was January 23, 1960, which would be when the decedent attained the age of seventy years. It named the decedent as " annuitant " and provided for (1) " monthly income payable to Kenneth Porter, the annuitant " and (2) " death benefit payable to the beneficiaries named ".

The insurance company agreed to pay (1) the monthly income of $293.80 to the annuitant from maturity date and during his lifetime, or the principal sum instead of such income, and (2) a death benefit computed as follows:

In the event of the annuitant's death after maturity date (if the principal sum was not paid at maturity) a continuance of the monthly income until the total sums so paid should equal the principal sum.

In the event of the annuitant's death before the maturity date, an amount not less than the total premiums paid to be determined under the " cash value " provisions of the policy.

The annual premium was $1,149.40. Twenty-four premiums would total $27,585.60. At maturity date decedent would have paid in that amount and would then be entitled to receive $36,405.20 or $293.80 monthly for life. If he elected to take the latter and subsequently died, the beneficiary would receive the $293.80 monthly until the total of all monthly payments equalled $36,405.20. But if the decedent died before the maturity date, the beneficiary would receive an amount equal to " cash value " as of the date to which premiums were paid.

That is the contingency which here occurred. The policy was taken on January 23, 1936. Decedent died March 8, 1943, by which time he would have paid eight annual premiums totalling $9,195.20 The beneficiary then became entitled to the " cash value " which would have been payable in the event of default in premium payment. Such " cash value " was $9,402.24, and the beneficiary received that amount.

The executrix contends that it was "insurance " within the meaning of the sections of the Tax Law above cited. *Matter of Ruppel* (N. Y. L. J., March 12, 1937, p. 1247, col. 5, affd. 255 App. Div. 843, motion for leave to appeal denied 255 App. Div. 964 and 280 N. Y. 852) supports her contention.

The later decision of the United States Supreme Court in *Helvering* v. *Le Gierse* (312 U. S. 531), however, is to the contrary. Under that decision the policies here involved are annuities rather than the usual or commonly accepted " insurance risks ".

The law is well settled that decisions of the United States Supreme Court interpreting provisions of the Federal estate tax law will be followed in the interpretation of parallel provisions of the New York estate tax law in aid of uniformity even if it involves departure from earlier decisions of the State courts. (*Matter of Weiden,* 263 N. Y. 107; *Matter of Cregan,* 275 N. Y. 337; *Matter of Pratt,* 262 App. Div. 240, affd. 289 N. Y. 621; *Matter of Russell,* 294 N. Y. 99; *Matter of Rogers,* 269 App. Div. 551.)

Our statute itself repuires the amount to be determined " under the provisions for the taxing of estates contained in any revenue act of the United States applicable to the estate of the decedent."

So in the *Rogers* case (*supra*) the Appellate Division, Second Department, applied the stated principle by following the deci-

sion of the United States Supreme Court in *Estate of Rogers* v. *Commissioner of Internal Revenue* (320 U. S. 410) as against the earlier decision of the Court of Appeals to the contrary in *Matter of Duryea* (277 N. Y. 310).

And again upon the question whether the retirement fund of a teacher-member of the teacher's retirement system of the city of New York was " insurance " within the meaning of the above-cited sections of the Tax Law, the State courts refused to follow the earlier decision so holding (*Matter of Fitzsimmons,* 158 Misc. 789, affd. 248 App. Div. 862, motion for leave to appeal denied 249 App. Div. 728) after a decision to the contrary by the Federal court (*Kernochan* v. *United States,* 29 F. Supp. 860, certiorari denied 309 U. S. 675, cited with approval in *Helvering* v. *Le Gierse,* 312 U. S. 531, *supra*; *Matter of Newton,* 177 Misc. 877, affd. 267 App. Div. 913, affd. 294 N. Y. 687).

The decision of the United States Supreme Court is applicable and should be followed here. The *pro forma* order is confirmed and the appeal dismissed.

Submit decree on notice.