In the Matter of the Estate of THOMAS W. RHODES, Deceased.

Surrogate's Court, Westchester County, December 7, 1949.

*Richard H. Levet* for Georgianna C. Rhodes, individually and as administratrix of the estate of Thomas W. Rhodes, deceased, appellant.

*Hamilton McInnes* for State Tax Commission.

GRIFFITHS, S.  The sole question presented by the appeal from the *pro forma* order fixing estate tax is whether or not the sum of $30,632.47 is taxable as an annuity or is entitled to the exemption granted with regard to insurance payable to a designated beneficiary by virtue of subdivision 9 of section 249-r and subdivision c of section 249-q of the Tax Law.

The contracts, six in number, were purchased by decedent from The Equitable Life Assurance Society of the United States.  Each is described therein as a retirement annuity and as a life annuity beginning at age sixty-five.  At the date of issuance of the first of such contracts in 1934, decedent was fifty years of age.  The last of said contracts was issued on August 18, 1937.  Decedent died on August 9, 1948.

Three of the contracts were purchased for a single premium. One of the contracts provided for the payment of premiums monthly and two for payment of premiums annually.  No medical or physical examination was required in connection with such contracts.

Each of the contracts provided in substance that if the annuitant died prior to the due date of the first annuity payment, the society would pay to the designated beneficiary an amount termed a " Death Benefit " as set forth in a designated schedule.  The schedules referred to indicate the respective amounts of the cash surrender values and death benefits for each of the years during which the contracts have been in force. An examination of the schedules discloses that except as to the two latest contracts wherein the cash values would not equal the scheduled death benefits until the contracts had been in force for twenty years, the cash values would equal the death benefits after the contracts had been in force for ten years.  In its analysis of each contract the court has computed the aggregate amount of premiums payable with respect to each installment contract at the expiration of one year, five years, ten years and twenty years, respectively, from the date of issuance.  Interest compounded at the rate of 3% annually has been computed for like periods with respect to the single premium contracts as well as upon the aggregate of premiums under each contract providing for the payment of premiums in monthly or annual installments.  Computations were also made to ascertain the amounts or aggregate amounts of the cash values and death benefits, respectively, payable under each contract at the expiration of corresponding periods of one, five, ten and twenty years.  The aggregate amount of the premiums payable under each contract with compound

interest thereon computed at the rate of 3% annually, was compared with the computed aggregate amounts of the cash values and death benefits, respectively, payable at the expiration of the corresponding periods. Such analysis demonstrated that in each case the amount or aggregate of premiums payable with respect to each contract with compound interest computed at the rate of 3% annually would exceed the amount of death benefits as well as the amount of the cash surrender values payable for the corresponding periods.

The assured died before attaining the age of sixty-five years and after all of the contracts had been in force for more than ten years. The State Tax Commission contends that the contracts for the payment of death benefits were nothing more than an agreement by the insurance company to return premiums paid with interest, if the annuitant died before attainment of age sixty-five so that the agreement for payment of an annuity could not be performed. It is urged that there is no risk-shifting or risk-distributing, and that the only risk assumed by the company was that the amounts it had agreed to pay as death benefits might be more than would be produced by its investment of the premiums paid by annuitant. It has been held that an agreement to pay interest at a rate greater than that earned on the funds invested does not constitute an insurance risk. (*Estate of Keller* v. *Commissioner of Internal Revenue*, 312 U. S. 543, 544.)

In *People ex rel. Metropolitan Life Ins. Co.* v. *Knapp* (193 App. Div. 413, affd. 231 N. Y. 630), the distinction between an annuity and insurance was described. The court therein described an annuity as a provision for life with no indemnity feature, and a contract of insurance as a provision against death. In *Helvering* v. *Le Gierse* (312 U. S. 531), it was stated that insurance involved risk-shifting and risk-distributing; that annuities and insurance were opposite; that from the company's view insurance looked to longevity, annuities to transiency.

The contracts involved herein do not provide for the payment of a fixed sum upon the death of the insured before attaining the age of sixty-five years. The amounts of the death benefits payable are dependent upon the period the contract has been in force. The contracts involved disclose neither risk-shifting nor risk-distributing, if the assured should die before attaining the age of sixty-five years. As above stated no insurance risk would be involved even though the amounts of death benefits, under any policy, at any time,

exceeded the cash surrender values, since such amounts would not exceed the aggregate of the premiums paid with interest at 3% compounded annually.

Under the life annuity provisions if the assured having attained the age of sixty-five years, survived for a short period of time, a smaller sum would become payable by the terms of the contracts than if he lived for a longer period. Thus, from the company's view, in such event, the contract would look to transiency rather than to longevity. Such has been held to be the mark of an annuity, but not of insurance, since from the company's view insurance looks to longevity and annuities to transiency. (*Helvering* v. *Le Gierse, supra.*) If the contracts involved either risk-shifting or risk-distributing in the event that the assured attained the age of sixty-five years, the risk could not be regarded as a device to shift and distribute the risk of premature death. (See *Helvering* v. *Le Gierse, supra,* and authorities cited.) Stripped of nonessentials, the contracts herein are designed to shift and distribute the risk of longevity. It is not the risk of premature death against which provision is sought to be made. Rather the apparent purpose of the contracts is to provide a monthly income so long as the assured shall live after having attained the age of sixty-five years, unless the assured shall have theretofore elected in favor of a refund annuity payable to the designated beneficiary in which event where the total payments due prior to the death of the insured are less than the scheduled death benefits, such difference would be payable in monthly installments to the designated beneficiary.

*Matter of Ruppel* (N. Y. L. J., March 12, 1937, p. 1247, col. 5, affd. 255 App. Div. 843, leave to appeal denied 255 App. Div. 964, and 280 N. Y. 852) involved the taxability of the same type of death benefits under the same clauses of insurance contracts issued by the same company. The assured therein had died before attaining the age of sixty-five. The Surrogate held that the proceeds payable under the death benefit provisions of said policies represented the proceeds of insurance on the life of decedent.

The determination in the *Ruppel* case (*supra*) became final on February 21, 1939, upon the denial by the Court of Appeals for leave to appeal. The decision, however, was rendered more than two years before the United States Supreme Court rendered its decisions in *Helvering* v. *Le Gierse* (*supra*) and *Keller* v. *Commissioner of Internal Revenue* (*supra*). In *Matter*

*of Fitzsimmons* (158 Misc. 789, affd. 248 App. Div. 862) the State courts had exempted from taxation, as insurance, benefits under a retirement system, which the Federal courts had held to be taxable as an annuity. (*Kernochan* v. *United States,* 29 F. Supp. 860, certiorari denied 309 U. S. 675.) · The taxability of such benefits to the extent of the accumulated salary deduc-́ tions of the employee as annuities in conformity with the decision of the Federal court was later upheld in *Matter of Newton* (177 Misc. 877, affd. 267 App. Div. 913, affd. 294 N. Y. 687.)

*Helvering* v. *Le Gierse* (*supra*) was decided in March, 1941. There the decedent, advanced in years, had purchased a single premium life insurance policy upon her own life, naming her daughter as beneficiary, and a single premium life annuity contract. The insurance policy would not have been issued without the annuity contract, but in all formal respects they were treated as distinct transactions. The majority opinion of the Supreme Court concluded that the two contracts should be considered together and that when so considered such contracts failed to spell out any element of insurance risk. The dissent was based solely upon the reasoning of the court below which had treated the insurance contract as separable and independent from the annuity contract. The dissent, therefore, did not rest upon the ground that the contracts, if treated together, would not constitute an insurance risk.

It is the established legislative policy of this State to conform the provisions of its taxing laws to those of the Federal laws with respect to estate taxes, and in the interest of uniformity of administration of estate tax laws, the decisions of the Federal courts should be followed by the courts of this State in construing similar provisions of State statutes. (*Matter of Weiden,* 263 N. Y. 107; *Matter of Cregan,* 275 N. Y. 337; *Matter of Russell,* 294 N. Y. 99; *Matter of Rogers,* 296 N. Y. 676.) In view of this policy and of the decisions in *Helvering* v. *Le Gierse* (*supra*) and *Estate of Keller* v. *Commissioner of Internal Revenue* (*supra*), this court is constrained to follow such holdings rather than the determination reached in *Matter of Ruppel* (*supra*). Although the Federal decisions above cited were rendered on slightly different factual situations, the conclusions reached therein as to the distinction between annuities and insurance are regarded as controlling upon the issue here presented. Due observance of the policy of uniformity of administration of estate tax laws requires uniformity of opinion as to what does not constitute insurance under the provisions of similar estate laws of the respective jurisdictions. The

circumstance that the Revenue Act of 1943 (58 U. S. Stat. 21) makes no distinction for estate tax purposes between the taxability of insurance, and of other assets, does not justify departure from authoritative decisions of the United States Supreme Court, as to what does not constitute insurance for estate tax purposes, rendered at a time when there were comparable tax statutes in both jurisdictions. A similar conclusion was reached by Surrogate HOWELL in an opinion in *Matter of Porter* (197 Misc. 472).

The court accordingly determines that the proceeds of such contracts represent annuities rather than insurance and are not entitled to the exemption granted under the laws of New York to insurance payable to a designated beneficiary. The appeal is dismissed.