The **VARIABLE ANNUITY LIFE INSURANCE CO.**, Plaintiff,

v.

Robert L. **CLARKE**, et al., Defendants.

Civ. A. No. H–91–1016.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 22, 1991.

Stephen D. Susman, Houston, Tex., for plaintiff.

Tracy L. Meritt, Dept. of Justice, Civ. Div., Washington, D.C., Steven S. Rosenthal, Robert M. Kurucza, Morrison & Foerster, Washington, D.C., Michael T. Powell, Houston, Tex., for defendants.

## ORDER

HOYT, District Judge.

Pending before the Court are the cross motions for summary judgment of the plaintiff, Variable Annuity Life Insurance Company ("VALIC"), and the defendants, Robert L. Clarke, the Office of the Comptroller of the Currency ("OCC"), the United States of America, National Bank of North Carolina ("NCNB"), and NCNB Securities, Inc. ("NCNBS"). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, NCNB further moves to dismiss the plaintiff's complaint with prejudice. After considering the motions, the responses, the summary judgment evidence, and the applicable law, it is this Court's opinion that the defendants' motions for summary judgment should be granted and that the plaintiff's motion should be denied.

## FACTS

On August 10, 1989, NCNB sought approval from the OCC to offer various annuity contracts on an agency basis through its wholly-owned subsidiary, NCNBS. On March 21, 1990, the Comptroller of the Currency, Robert L. Clarke, issued an approval letter regarding NCNB's request. The Comptroller determined that annuities are primarily financial investments and that the sale of annuities are within the power of national banks to broker financial investment instruments.

On April 16, 1991, VALIC, an insurance company with its principal place of business in Houston, Texas, that underwrites and sells securities in 50 states, filed suit seeking declaratory and injunctive relief pursuant to 5 U.S.C. § 706(2)(A) (1966) and 28 U.S.C. §§ 2201 and 2202 (1984). VALIC contends that the Comptroller's decision expressed in the March 21st approval letter, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Specifically, VALIC contends that the Comptroller's decision permits and encourages NCNB and other national banks to enter the insurance business in violation of the National Bank Act, 12 U.S.C. §§ 24(7) and 92 (1988).[1]

## SUMMARY JUDGMENT

■ In a summary judgment proceeding, the movant bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment is authorized if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Rule 56(c) requires this Court to enter summary judgment if the evidence favoring the nonmovant is not sufficient for a jury to enter a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Further, the standards upon which this Court evalu-

---

1. The Court notes that section 92 is omitted from recent editions of the United States Code. Because the issue of section 92's continuing validity is not part of the case or controversy before the Court, the Court does not address this issue.

ates motions for summary judgment do not change simply because the parties present cross-motions. *Taft Broadcasting v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991).

## STANDARD OF REVIEW

It is undisputed that the Comptroller's approval letter of March 21st is subject to this Court's review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1988); *see Camp v. Pitts*, 411 U.S. 138, 140, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1973) (per curiam). The principles regarding judicial deference to an agency's interpretation of a statute within its area of expertise are outlined in *Chevron U.S.A., Inc. v. Nat'l. Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

■ This Court's initial inquiry under *Chevron*, is whether Congress has directly addressed the specific question at issue. *Id.* If congressional intent is clear in the statute, this Court must enforce that intent. If, however, Congress has not addressed the specific question at issue, this Court must determine whether the agency's ruling is based on a reasonable interpretation of that statute. Here, Congress has not specifically addressed the issue and the Court must look to the agency's interpretation in accordance with *Chevron*.

In upholding an agency's decision "[t]he Court need not conclude that the agency's construction was the only one it permissibly could have adopted, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. The agency's interpretation is controlling unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Camp v. Pitts*, 411 U.S. at 140–42, 93 S.Ct. at 1243–44. Therefore, this Court must defer to the Comptroller's interpretation of the National Bank Act, so long as the interpretation is reasonable. *See Clarke v. Securities Industry Association*, 479 U.S. 388, 403–04, 107 S.Ct. 750, 759, 93 L.Ed.2d 757 (1987).

■ VALIC contends that the Comptroller's interpretation contradicts the plain meaning of 12 U.S.C. § 92. VALIC argues that § 92 plainly prohibits national banks from acting as sales agents for insurance companies in locations where the population exceeds 5,000. In support, VALIC relies heavily on *Saxon v. Georgia Ass'n of Independent Ins. Agents, Inc.*, 399 F.2d 1010 (5th Cir.1968). The *Saxon* court held that the Office of the Comptroller of the Currency acted outside its scope of authority and contrary to § 92 when it granted national banks the broad and unlimited power to "act as agent in the issuance of insurance which is incidental to banking transactions." *Id.* at 1012.

This Court disagrees with VALIC's interpretive approach of § 92 under *Saxon*. The plain language of § 92 permits national banks in towns with 5,000 or fewer people to act as agent for fire, life, or other general insurance companies. Moreover, the legislative history of § 92 indicates that it was proposed to provide an additional source of revenue for national banks located in small towns and not to protect the markets from competing insurance agents. *See* 53 Cong.Rec. 11001 (1916). Further, it is doubtful that the word "insurance" in § 92 can be construed to include annuities. The term "insurance" is not defined in § 92, and this silence, coupled with the express delegation of rulemaking authority to the Comptroller, suggests that Congress explicitly "left a gap for the [Comptroller] to fill." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

Because § 92 is silent with respect to defining the term "insurance", the Court must defer to any reasonable interpretation by the Comptroller on that issue. *See Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781. The Comptroller determined factually that annuities are primarily financial investment instruments, not insurance. This determination is based upon his view that annuities lack the basic insurance characteristic of indemnification against risk of loss. The Comptroller further found that to the extent that the annuities at issue are Glass–Steagall securities, they would also fall within the securities brokerage authority of national banks. *See* 12 U.S.C. § 24(7).

This Court finds that it is neither arbitrary nor capricious to view 12 U.S.C. § 92 as a supplemental powers provision and not a limitation on national banks incidental powers under § 24(7). Further, the Court finds that the Comptroller's determination that annuities are a specialized product and not a "broad form" of insurance to which *Saxon* applied, is reasonable. The plain language of § 92 supports the Comptroller and nothing in the legislative history or the statute's stated purpose casts doubt on his interpretation. *See, e.g., Northeast Bancorp, Inc. v. Board of Governors*, 849 F.2d 1499, 1503 (D.C.Cir.1988).

The Court concludes that the Comptroller did not incorrectly interpret the controlling statutory provisions. His reasonable interpretation was no more than a "permissible construction," all that is required in order to secure this Court's deference. *See Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

It is ORDERED that the defendants' motions for summary judgment are GRANTED. It is further ORDERED that the plaintiff's motion for summary judgment is DENIED. Final Judgment is forthcoming.