[598 NYS2d 824]

In the Matter of NEW YORK STATE ASSOCIATION OF LIFE UNDERWRITERS, INC., et al., Respondents, v NEW YORK STATE BANKING DEPARTMENT et al., Appellants.

Third Department, June 3, 1993

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General,* Albany *(John McConnell* and *Peter G. Crary* of counsel), for appellants.

*Hinman, Straub, Pigors & Manning, P. C.,* Albany *(Bartley J. Costello, III,* and *Kimberly C. Lawrence* of counsel), and *Jenner & Block,* Washington, D.C. *(Jonathan B. Sallet* and *Ann Kappler* of counsel), for respondents.

*Sullivan & Cromwell,* New York City *(Theodore Edelman, John L. Warden, H. Rodgin Cohen, Michael M. Wiseman, Robert J. Giuffra, Jr.,* and *Lisa J. Laplace* of counsel), and *David L. Glass,* New York City, for New York State Bankers Association, *amicus curiae.*

### OPINION OF THE COURT

CREW III, J.

On December 20, 1989 and February 12, 1990 the Office of the Comptroller of the Currency (hereinafter OCC) issued interpretive letters declaring that national banking associations were permitted to broker fixed-rate annuities under the provisions of 12 USC § 24 (Seventh). Following the issuance of the OCC letters, the New York State Bankers Association requested an opinion by respondents as to whether State-chartered banks had comparable authority under State law.

On January 24, 1991, in response to that request, respondents issued a letter opining that pursuant to Banking Law § 96 State-chartered banks may sell fixed-rate annuity contracts as agents for insurance companies. Petitioners, which consist of three individual insurance agents and a number of not-for-profit organizations representing insurance companies, filed a petition with respondents pursuant to State Administrative Procedure Act § 204 and 3 NYCRR supervisory procedure G 110 for a declaratory ruling in that regard. In response, respondents declared that "the sale of fixed-rate and variable-rate annuities is an incidental banking power authorized pursuant to Banking Law § 96 (1) * * *. That activity may thus be carried out either directly in the bank or through a subsidiary." The letter also provided that a bank could invest in a corporation engaged in the sale of an insurance product upon receiving Banking Board approval pursuant to the provisions of Banking Law § 97 (5).

Petitioners then commenced this CPLR article 78 proceeding to annul the opinion letters and seeking a declaration that the sale of annuities is not an "incidental power" contemplated by Banking Law § 96 (1). Following service of an amended petition and respondents' answer, Supreme Court annulled the opinion letters, converted the proceeding to a declaratory judgment action and declared that "[t]he sale of fixed or variable rate annuities by New York State-chartered commercial banks, directly or through a subsidiary, is not an 'incidental power' of the 'business of banking' within the meaning of [Banking Law § 96 (1)]". This appeal by respondents ensued.

■ Central to the issue to be resolved here is the proper interpretation to be placed upon Banking Law § 96, which provides, insofar as relevant:

"Every bank * * * shall * * * have the following powers:

"1. To discount, purchase and negotiate promissory notes, drafts, bills of exchange, other evidences of debt, and obligations in writing to pay in installments or otherwise all or part of the price of personal property or that of the performance of services; purchase accounts receivable, whether or not they are obligations in writing; lend money on real or personal security; borrow money and secure such borrowings by pledging assets; buy and sell exchange, coin and bullion; and receive deposits of moneys, securities or other personal property upon such terms as the bank or trust company shall

prescribe; *and exercise all such incidental powers as shall be necessary to carry on the business of banking"* (emphasis supplied).

It is the latter portion of this subdivision which creates the issue to be resolved upon this appeal. Petitioners maintain, we believe incorrectly, that the "incidental powers" clause must be strictly limited to actions necessary to implement the specifically enumerated activities contained in Banking Law § 96 and, inasmuch as the sale of annuities does not implement or further any of the activities specifically delineated in the section, it is an impermissible action. Quite to the contrary, as early as 1857 the Court of Appeals determined that the "incidental powers" clause was not intended to limit the power of banks to the specifically enumerated powers of the Banking Law *(see, Curtis v Leavitt,* 15 NY 9, 56-59). Indeed, the Court of Appeals, in determining that banks are authorized to purchase securities, made clear that the "incidental powers" clause is not limited to activities related only to the powers enumerated in the Banking Law *(see, Block v Pennsylvania Exch. Bank,* 253 NY 227). In short, we are of the view that the "incidental powers" clause was intended to permit banks to expand their banking services over time consistent with evolving business practices and their customers' needs. This, of course, does not mean that banks are at liberty to engage in any kind of business activity and, to be sure, they have been limited in that regard *(see, State Bank of Commerce v Stone,* 261 NY 175 [bank may not transfer a portion of its assets to a depositor to induce cash deposits to bank]; *Gause v Commonwealth Trust Co.,* 196 NY 134 [trust company may not act as guarantor of sale of securities to induce party to join pooling syndicate]; *Talmage v Pell,* 7 NY 328 [banks do not have unlimited authority to trade in stocks]; *Matter of Savings Banks Trust Co. v Comptroller of State of N. Y.,* 101 AD2d 908 [bank may not levy a service charge on abandoned property turned over to Comptroller]).

It remains to be determined, therefore, whether the purchase of annuities is a permissible incident to the business of banking. In that regard, respondents have determined that the brokerage of fixed-rate annuities is permissible because fixed-rate annuities are financial investment instruments which are very similar in character to other financial instruments which banks are allowed to offer, including debt instruments and certificates of deposit. Initially, we note that when reviewing an agency's interpretation of a statute, we should

defer to the agency's interpretation if the application of the statute involves any special administrative competence or expertise, and if the interpretation is not irrational or unreasonable it should be upheld *(see, Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 62 NY2d 539, 545). Where, on the other hand, "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459).

We are of the view that Banking Law § 96 (1) does not lend itself to pure statutory reading and analysis, dependent only upon an accurate apprehension of legislative intent. It is clearly not possible to accurately apprehend the Legislature's intent, because the "incidental powers" clause has as its purpose events in futuro. It was included in the law to accommodate the changing and evolving conditions in the business and banking worlds. As has been aptly noted by the Court of Appeals, "we should not close our minds to the well-known fact that the banking business in this country has developed rapidly during the last few years to meet the ever-growing demands of business. Banks *ex necessitate* have been required to extend their functions and perform services formerly foreign to the banking business" *(Dyer v Broadway Cent. Bank,* 252 NY 430, 433). Indeed, the panoply of services offered by banks today were unheard of and unthinkable at the turn of the century. Such practices as the sale of certificates of deposit, buying and selling securities on behalf of customers, the establishment of individual retirement accounts, financial planning and investment counseling, to name a few, are all activities incident to the business of banking, not specifically enumerated in the Banking Law and unquestionably not contemplated by the Legislature at the time of the enactment of Banking Law former § 106, now Banking Law § 96. Quite plainly, in order to properly interpret the very amorphous phrase "incidental powers" necessary to carry on the "business of banking", special expertise is required encompassing a comprehensive understanding of the evolvement of banking, the nature and extent of present practices, and the need for and legitimacy of added banking services in light of present-day business technology and customer needs.

The question distills then to whether the interpretation by respondents is irrational or unreasonable. If not, we must defer to respondents' interpretation. Petitioners contend, and

respondents and *amicus* do not contest, that banks are not authorized to sell insurance. Petitioners further contend that annuities are insurance because, *inter alia,* they are defined in the Insurance Law and are regulated by the Department of Insurance *(see,* Insurance Law §§ 201, 301, 1113 [a] [2]). We do not find this position persuasive. While "annuity" is defined in the Insurance Law, it is treated separately and distinctly from an "insurance contract" which is also defined in that law *(compare,* Insurance Law § 1101 [a] [1], *with* Insurance Law § 1113 [a] [2]). Petitioners' contention that an annuity contract is an insurance product is correct in the sense that it is traditionally sold by insurance agents and insurance companies. However, that characterization begs the question of whether an annuity is more properly considered insurance or a financial investment instrument.

The great weight of authority in this country views an annuity as an investment and not a contract of insurance *(see, e.g., Helvering v Le Gierse,* 312 US 531; *Carroll v Equitable Life Assur. Socy.,* 9 F Supp 223; *Corporation Commn. v Equitable Life Assur. Socy.,* 73 Ariz 171, 239 P2d 360; *Prudential Ins. Co. v Howell,* 29 NJ 116, 148 A2d 145; *People ex rel. Metropolitan Life Ins. Co. v Knapp,* 193 App Div 413, *affd* 231 NY 630; *Matter of Rhodes,* 197 Misc 232; *Matter of Newton,* 177 Misc 877, *affd* 267 App Div 913, *affd* 294 NY 687; *Matter of Sothern,* 170 Misc 805, *affd* 257 App Div 574; *Daniel v Life Ins. Co.,* 102 SW2d 256 [Tex]; *see also,* 1 Appleman, Insurance Law and Practice § 84; 4 NY Jur 2d, Annuities, § 4, at 8-9). In addition, the Insurance Law defines "insurance contract" as an agreement whereby an insurer is obligated to "confer benefit of pecuniary value upon * * * [an] 'insured' * * * dependent upon the happening of a fortuitous event" (Insurance Law § 1101 [a] [1]). Fortuitous event is defined as "any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party" (Insurance Law § 1101 [a] [2]). An annuity, on the other hand, is defined as an agreement "to make periodical payments" where the continuance of such payments "depends upon the continuance of human life" (Insurance Law § 1113 [a] [2]). The definitions involving insurance clearly contemplate payment as the result of loss, i.e., loss of life, loss of property, loss of health. No such contemplation exists with annuities. Rather, annuities contemplate long-term streams of income to annuitants during their lifetimes based upon an initial lump-sum payment *(see, People ex rel. Metropolitan Life*

*Ins. Co. v Knapp, supra,* at 415; *see also,* 1 Appleman, Insurance Law and Practice § 89, at 319-320). It cannot be said, therefore, that respondents' conclusion that an annuity resembles a certificate of deposit in that it pays the investor a fixed stream of income over time in return for an initial investment is irrational or unreasonable *(see, Variable Annuity Life Ins. Co. v Clarke,* 786 F Supp 639). As such, the sale of such contracts is an appropriate incident to the "business of banking".

■ As a final matter, we also disagree with Supreme Court's conclusion that State-chartered banks may not invest in a corporation engaged in the sale of an insurance product upon receiving Banking Board approval. Banking Law § 97 (5) empowers the Banking Board to permit a bank to invest in the "capital stock of *any* * * * corporation" (emphasis supplied; *see,* Banking Law §§ 13, 14), so long as the Banking Board's decision in allowing such investment comports with the mandates of Banking Law § 10 *(see,* Banking Law § 14 [1] [d]; § 97 [4-a]). While banks are prohibited from investing in the common or preferred stock of a life insurance company *(see,* Banking Law § 97 [4-b]), nothing in the law prohibits such investments in companies selling insurance products other than life insurance. Accordingly, Supreme Court's judgment that banks may not "invest in a corporation engaged in the sale of any type of insurance product" is clearly erroneous.

MIKOLL, J. P., YESAWICH JR., MAHONEY and HARVEY, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as annulled respondents' determination and declared that the sale of fixed- or variable-rate annuities by State-chartered commercial banks, directly or through a subsidiary, is not an "incidental power" of the "business of banking" under Banking Law § 96 (1); determination confirmed and it is declared that such a sale is an "incidental power" of the "business of banking" under Banking Law § 96 (1); and, as so modified, affirmed.