The VARIABLE ANNUITY LIFE INSURANCE CO., Plaintiff–Appellant,

v.

Robert L. CLARK, Comptroller of the Currency, et al., Defendants–Appellees.

No. 92–2010.

United States Court of Appeals, Fifth Circuit.

Jan. 13, 1994.

David Overlock Stewart, Raymond C. Ortman, Ropes & Gray, Washington, DC, for plaintiff-appellant.

---

Ellen K. Dollase, Kansas City, MO, pro hac vice, amicus curiae in support of appellant.

Jacob M. Lewis, Mark B. Stern, U.S. Dept. of Justice, Civ. Div., Washington, DC, for Clark, Office of Comp. & U.S.

Steven S. Rosenthal, Robert M. Kurucza, Morrison & Foerster, Washington, DC, for NCNB BK. & NCNB Sec.

Jonathan Sallet, Ann M. Kappler, Jenner & Block, Washington, DC, amicus curiae.

Michael F. Crotty, Washington, DC, amicus curiae (AMA).

Donn C. Meindertsma, David W. Roderer, Eric L. Hirschhorn, Winston & Strawn, Washington, DC, amicus curiae American Bankers Assn., Assn. of Banks in Ins., Bankers Roundtable, Consumer Bankers Assn., Independent Bankers Assn. of America, Independent Bankers Assn. of Texas, Louisiana Bankers Assn., Mississippi Bankers Assn., Savings & Community Bankers of America, and Texas Bankers Assn.

Theodore Edelman, John L. Warden, Sullivan & Cromwell, New York City, amicus curiae NY Clearing House Assn.

Before GOLDBERG, JOLLY and WIENER, Circuit Judges.*

PER CURIAM:

The Petitions for Rehearing are DENIED and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Federal Rules of Appellate Procedure and Local Rule 35) the Suggestions for Rehearing En Banc are also DENIED.

JERRY E. SMITH, Circuit Judge, with whom DAVIS, BARKSDALE, and EMILIO M. GARZA, Circuit Judges, join, dissenting:

I respectfully dissent from the failure of the court to grant rehearing en banc in this important matter. The panel has badly erred in adopting a view of the subject statute that is contrary to the well settled interpretation that had prevailed. The panel's holding, moreover, seriously thwarts competition in a major market, with no indication that that is what Congress intended.

## I.

Part of the problem is that because of the large number of recusals in this case, it is not possible to discern the views of a substantial majority of the active judges on whether en banc rehearing should be granted. Six of the thirteen active judges are disqualified from participating in this matter, leaving only seven to vote on rehearing en banc.

The applicable rule requires the affirmative vote of a majority of the active judges—in this case, seven of the thirteen active judges—for en banc consideration, as recused judges are counted as members of the court for purposes of the calculation.[1] Sometimes, this formulation makes it mathematically impossible to rehear a panel opinion en banc. *See, e.g., United States v. Nixon,* 827 F.2d 1019 (5th Cir.1987) (per curiam) (on petition for rehearing and suggestion of rehearing en banc) (eleven of fourteen active judges recused), *cert. denied,* 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). In the present case, en banc rehearing, while not absolutely impossible, is almost so, for there are only five active judges who are able to participate and were not members of the

---

* Judges King, Garwood, Higginbotham, Jones, Duhé, and DeMoss did not participate in the consideration of the suggestions for rehearing en banc.

1. "Judges in regular active service who are disqualified for any reason or who cannot participate in the decision of an en banc case neverthe-

less shall be counted as judges in regular active service." 5TH CIR.R. 35.6. *See* 28 U.S.C. § 46(c); FED.R.APP.P. 35(a); *Shenker v. Baltimore & Ohio R.R.,* 374 U.S. 1, 4–5, 83 S.Ct. 1667, 1670-71, 10 L.Ed.2d 709 (1963); *Western P. R.R. v. Western P. R.R.,* 345 U.S. 247, 250, 73 S.Ct. 656, 97 L.Ed. 986 (1953).

unanimous panel that issued the opinion in question. Accordingly, there is no way to determine whether a majority of the non-recused judges would agree with the panel's holding if the case had been taken en banc.

Recusal seems to be a particular problem in cases involving large banks and their regulatory agencies (and the attorneys of both) with whom several active judges are likely to have relationships that require them to recuse. *See, e.g., Resolution Trust Corp. v. Montross,* 944 F.2d 227 (5th Cir.1991) (per curiam) (en banc) (five active judges recused). Also, counsel are advised that the participation of amici curiae, which was permitted in this case,[2] can result in the recusal of judges because of the identity of the amici and/or their counsel.

## II.

No one can seriously question the importance of this case to the banking industry and to commerce and competition in general. Banks sold $12.2 billion in annuities (fixed and variable) in 1992,[3] representing 17% of all individual annuities sold[4] and 21.9% of fixed annuities sold.[5] Annuities account for 7% of all bank brokerage sales activities.[6]

This case presents the unusual circumstance of agreement between the regulating governmental agency and the regulated industry. The dispute is between the insurance industry, which sued to prohibit increased competition in the sale of annuities, and the banking industry, which seeks to compete therein.

In 1985, the Comptroller of the Currency determined that national banks have the authority to broker variable annuities under § 16 of the Glass–Steagall Act. This Comptroller's Approval repeatedly has been affirmed by the Comptroller since 1985 and, until the instant case, has not been challenged. In the decision at issue here, the Comptroller in 1990 determined that fixed and variable annuity contracts could be sold by NationsBanc Securities, Inc., a subsidiary of NationsBank of North Carolina, N.A.

The main problem with the panel opinion is that the panel, in reversing a district court holding to the contrary, *see Variable Life Ins. Co. v. Clarke,* 786 F.Supp. 639 (S.D.Tex. 1991), has contravened *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), by "substitut[ing] its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. at 2782. *Chevron* forbids a court to do so "[i]f ... Congress has not directly addressed the precise question at issue." *Id.* at 843, 104 S.Ct. at 2781. The panel appears to have fallen into the trap discussed by this court in *National Grain & Feed Ass'n v. OSHA,* 866 F.2d 717, 732–33 (5th Cir.1988), addressing our proper role under *Chevron:*

> We are faced, therefore, with a statute and legislative history that are not as clear as they could be.... Our role in reviewing a regulation under such circumstances is set forth in *Chevron....* Thus, only where congressional intent is pellucid are we entitled to reject reasonable administrative construction of a statute.... Where, on the other hand, an agency's interpretation is a reasonable reading of intent, we defer to it.
>
> ....
>
> ... Were we to divine Congress's intent *de novo* in this matter, we might with some ease conclude that the better view is that Congress, if faced squarely with the issue, would have required [a different result].

**2.** The court granted leave to the following entities to appear as amici curiae in support of the petitions for rehearing and/or the suggestions of rehearing en banc: The American Bankers Association, the Association of Banks in Insurance, Bankers Roundtable, Consumer Bankers Association, Independent Bankers Association of America, Independent Bankers Association of Texas, Louisiana Bankers Association, Mississippi Bankers Association, Savings & Community Bankers of America, Texas Bankers Association, and New York Clearing House Association.

**3.** *Bank Annuity Sales Reach $12.2 Billion in 1992,* Newsletter of the Bank-Insurance Industry, 1993, No. 1, at 1.

**4.** *Id.*

**5.** Kenneth Kehrer Assocs., as reported to the Office of the Comptroller of the Currency.

**6.** Card Ceryl & Dave Nadig, *Variable Annuities Add a Steady Flow to Bank Brokerages' Revenue Streams,* Am. Banker, July 14, 1993, at 12.

However, given the ambiguity visited here by Congress, and in the absence of a specific exposition by the Supreme Court, we defer to [the agency]. [Citations omitted.]

At issue in the case *sub judice* is § 24(7) of the National Bank Act, 12 U.S.C. § 24(7), which grants to national banks "all such incidental powers as shall be necessary to carry on the business of banking." In opining that that section authorizes national banks to sell annuity contracts, the Comptroller reasoned that § 92 of the National Bank Act, 12 U.S.C. § 92, which permits national banks to act as insurance agents in locations not exceeding 5,000 inhabitants, does not limit the power to sell insurance in larger towns and cities and that, in any case, annuities are not a form of insurance.

As the panel noted, this court in *Saxon v. Georgia Ass'n of Indep. Ins. Agents*, 399 F.2d 1010 (5th Cir.1968), held that § 92 prohibits national banks from selling insurance products in localities with more than 5,000 inhabitants. So, unless we were to decide to overrule *Saxon* en banc, the question becomes whether *all* annuities—both fixed and variable—are a form of insurance. The better view—and certainly a reasonable one that is entitled to deference under *Chevron*—is that of the Comptroller, who reasoned that "[a]s part of their traditional role as financial intermediaries, banks have broad powers to buy and sell financial investment instruments as agents for customers ... [and] [a]lthough annuities have historically been a product of insurance companies, they are primarily financial investments," as annuity investors "are not seeking to pool a catastrophic risk such as death, injury, or property damage, but are instead seeking a guaranteed, long-term return on their assets."

Section 92 nowhere defines "insurance." Under *Chevron*, this should leave it to the Comptroller to arrive at a reasonable definition, insofar as it relates to the industry within his jurisdiction, namely, banking. Here, the Comptroller found that dictionaries describe insurance as "a contract for indemnification against risk of loss," while "[i]nvestors who purchase annuities are not seeking to pool a catastrophic risk such as death, injury, or property damage, but are instead seeking a guaranteed, long-term return on their assets," and "most commonly, annuities are marketed as a tax-sheltered means of saving for retirement."

This court agrees: In *In re Young*, 806 F.2d 1303, 1306 (5th Cir.1987), we said that "[a]n annuity is essentially a form of investment." (Quoting *In re Howerton*, 21 B.R. 621, 623 (Bankr.N.D.Tex.1982).) To the same effect are *New York State Ass'n of Life Underwriters v. New York State Banking Dep't*, 190 A.D.2d 338, 598 N.Y.S.2d 824, 834 (3d Dep't 1993) ("the great weight of authority ... views an annuity as an investment and not a contract of insurance"), *leave to appeal granted*, 82 N.Y.2d 656, 602 N.Y.S.2d 805, 622 N.E.2d 306 (1993); 1 JOHN A. APPLEMAN, INSURANCE LAW & PRACTICE § 84, at 295 (1981) ("Annuity contracts must ... be recognized as investments rather than as insurance."); *Daniel v. Life Ins. Co. of Va.*, 102 S.W.2d 256, 260–61 (Tex.Civ.App.—Austin 1937, no writ) (an annuity is "essentially a form of investment"); *Carroll v. Equitable Life Assurance Soc'y*, 9 F.Supp. 223, 224 (W.D.Mo.1934) ("The granting of an annuity contract is in the nature of an investment.").[7] Thus, as the Supreme Court observed, "annuity and insurance are opposites." *Helvering v. LeGierse*, 312 U.S. 531, 541, 61 S.Ct. 646, 650, 85 L.Ed. 996 (1941).

The panel overlooks the majority opinion in *Securities & Exch. Comm'n v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959). There, the Court held that variable annuity contracts

---

7. Other courts have carefully distinguished annuities from insurance in holding, for example, that annuities are not excludable as insurance for federal income tax purposes, are not insurance for purposes of the bankruptcy laws, and are not insurance under state law. *E.g., Estate of Keller v. Commissioner*, 312 U.S. 543, 544–45, 61 S.Ct. 651, 652, 85 L.Ed. 1032 (1941); *Kernochan v. United States*, 29 F.Supp. 860, 865–66, 89 Ct.Cl. 507 (1939), *cert. denied*, 309 U.S. 675, 60 S.Ct. 711, 84 L.Ed. 1019 (1940); *In re Walsh*, 19 F.Supp. 567, 571–75 (D.Minn.1937); *In re Sothern's Estate*, 257 A.D. 574, 14 N.Y.S.2d 1, 3–4 (1939); *In re Rhodes' Estate*, 197 Misc. 232, 94 N.Y.S.2d 406, 411 (Surr.Ct.1949); *People ex rel. Metro. Life Ins. Co. v. Knapp*, 193 A.D. 413, 184 N.Y.S. 345, 347 (3d Dep't 1920), *aff'd mem.*, 231 N.Y. 630, 132 N.E. 916 (1921); *Commonwealth v. Metropolitan Life Ins. Co.*, 254 Pa. 510, 98 A. 1072, 1073 (1916); *State ex rel. Equitable Life Assurance Soc'y v. Ham*, 54 Wyo. 148, 88 P.2d 484, 488 (1939).

are "securities" that must be registered under the Securities Act of 1933 and are not insurance policies, and the issuing companies are not insurance companies or engaged in the "business of insurance" under the McCarran–Ferguson Act. The Court recognized "that life insurance is an evolving institution. Common knowledge tells us that the forms have greatly changed even in a generation. And we would not undertake to freeze the concepts of 'insurance' or 'annuity' into the mold they fitted when these Federal Acts were passed." *Id.* at 71, 79 S.Ct. at 622. With annuities, "[t]here is no true underwriting of risks, the one earmark of insurance as it has commonly been conceived of in popular understanding and usage." *Id.* at 73, 79 S.Ct. at 623 (footnote omitted).

While the instant petitions for rehearing and suggestions for rehearing en banc were pending, the Supreme Court, in *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,* —— U.S. ——, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993), reaffirmed the viability of its 1959 decision in *Securities & Exch. Comm'n v. Variable Annuity Life Ins. Co. of Am.* In interpreting the Employee Retirement and Income Security Act of 1974 ("ERISA"), the Court stated that it "seek[s] guidance from [its] decisions construing the insurance policy exemption ordered in the Securities Act of 1933." *Id.* —— U.S. at ——, 114 S.Ct. at 527 (citations omitted). The Court added,

> In *SEC v. Variable Annuity ...*, we observed that "the concept of 'insurance' entails some investment risk-taking on the part of the company," and "involves a guarantee that at least some fraction of the benefits will be payable in fixed amounts." [359 U.S.] at 71 [79 S.Ct. at 622]. A variable annuity, we held, is not an "insurance policy" within the meaning of the statutory exemption because the contract's entire *investment* risk remains with the policyholder inasmuch as "benefit payments vary with the success of the [insurer's] investment policy," *id.,* at 69 [79 S.Ct. at 620], and may be "greater or less, depending on the wisdom of [that] policy." *Id.,* at 70, 79 S.Ct. at 621.

> ... [T]his phase of the contract was serving primarily an investment, rather than an insurance, function. [*SEC v. United Benefit Life Ins. Co.,* 387 U.S. 202, 208, 87 S.Ct. 1557, 1560, 18 L.Ed.2d 673 (1967).]

> The same approach—division of the contract into its component parts and examination of risk allocation in each component—appears well-suited to the matter at hand....

*Id.* (some brackets in original). The Court continued,

> "... [T]he assumption of an investment risk cannot by itself create an insurance provision under the federal definition. The basic difference between a contract which to some degree is insured and a contract of insurance must be recognized."

*Id.* —— U.S. at ——, 114 S.Ct. at 529 n. 13 (quoting *United Benefit,* 387 U.S. at 211, 87 S.Ct. at 1562 (citation omitted in original)). "A component fits within the guaranteed benefit policy exclusion only if it allocates investment risk to the insurer." *Id.* —— U.S. at ——, 114 S.Ct. at 520.

In *John Hancock,* the Court was construing ERISA in light of its interpretation of the Securities Act of 1933. In interpreting the National Bank Act, this court should do the same.

The panel also does not address *In re Newman,* 993 F.2d 90 (5th Cir.1993), maybe because it was issued only two months before the panel opinion. There, we held that under Texas law and the Uniform Commercial Code, annuities are "general intangibles." The significance is that the code expressly excludes insurance contracts from the category of "general intangibles."

Finally, the panel is in error in holding that *all* annuities are insurance. Some annuities do not involve mortality or actuarial calculations. Those, at least, should be treated differently.

The consequence of all of this is that there is at least a *reasonable* argument that not all annuities are insurance. If that is so, under *Chevron* we should defer to the Comptroller's interpretation of the statute if, as the district court held here, his interpretation "is based on a permissible construction of the

statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. Or, at the very least, the question is significant enough for this court to review en banc. Concluding that its failure to do so is a serious error, I respectfully dissent.